## Syme, Appellant, *v.* Bankers National Life Insurance Company.

Argued May 27, 1958. Before JONES, C. J., BELL, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Sigmund H. Steinberg,* with him *Samuel P. Lavine,* and *Blanc, Steinberg, Balder & Steinbrook,* for appellant.

*Owen B. Rhoads,* with him *William H. Lowery,* and *Barnes, Dechert, Price, Myers & Rhoads,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, July 25, 1958:

This action in assumpsit is based on a policy of insurance issued by the defendant company on March 15, 1955, on the life of M. Herbert Syme who died on August 17, 1956. The company refused to pay the benefits stipulated in the policy on the ground that it was fraudulently obtained. The named beneficiaries thereupon instituted the present action in order to recover on the contract.

In addition to averring the issuance and delivery of the policy, payment by the insured of the premiums due thereon in his lifetime and the insured's death, the complaint sets forth that the application for insurance, which Syme had signed, was subsequently altered by the general agent of the company (who had solicited and received the application) and that the policy which was delivered to and accepted by the applicant was not the policy specified in the application when it was signed by him.

The defendant's answer substantially admitted these averments of the complaint but alleged that the general agent of the company, in adding to the application after it had been signed by the applicant, was acting as the agent of the insured and that the latter had thereafter ratified the agent's addition to the application by accepting the policy with a copy of the altered application attached. The defendant further alleged, under a heading "New Matter", that the insured, in his answers to certain of the questions propounded in the application, had made misrepresentations, material to the risk, which served to render the policy invalid.

The plaintiffs filed what they mistakenly termed preliminary objections under Rule 1017 (b) (4) of the Rules of Civil Procedure in the nature of a demurrer to the defendant's answer. The pleading expressly moved for judgment for the plaintiffs on the ground that the matters alleged by the defendant's answer were insufficient in law as a defense to the action, and concluded with a prayer that judgment be entered for the plaintiffs. What the pleading actually amounted to in substance and effect was a motion for judgment on the pleadings under Rule 1034 of the Rules of Civil Procedure, and is to be so regarded. After argument, the court dismissed the so-called preliminary objections, thus refusing the plaintiffs summary judgment in an

order from which this appeal was taken. Such an order, although interlocutory, is nevertheless appealable under the Act of April 18, 1874, P.L. 64, 12 PS §1097, "which made appealable the refusal of the analogous motion, under prior practice, of judgment for want of a sufficient affidavit of defense": *Wark & Company v. Twelfth & Sansom Corporation*, 378 Pa. 578 580, 107 A. 2d 856. Cf. also *Epstein v. Kramer*, 374 Pa. 112, 120, 96 A. 2d 912.

In considering the plaintiffs' motion for judgment on the pleadings, the allegations of the defendant's answer are, of course, to be taken as true. But, that does not mean that the motion operates to render binding the defendant's inferences of fact or conclusions of law: *Wark & Company v. Twelfth & Sansom Corporation*, supra. It was in just such regard that the court below fell into error, in part, in the instant case when it accepted as binding on the plaintiffs the defendant's conclusion of law that the general agent of the insurance company, in making the alteration in the application, was acting as the applicant's agent. There are no facts appearing of record which would justify the conclusion. At best, the allegation is but the pleader's self-serving legal opinion.

Mr. Syme had been insured by the defendant company under various policies of life insurance for a period of more than ten years prior to his death during which time he had paid the company in premiums a total of $26,293.60. By 1953, he had four separate policies with face amounts totalling $28,000 and one additional policy for $3,500. On or about October 9, 1953, he accepted a single policy from the company in the face amount of $25,000 and allowed the four policies for $28,000 to lapse, the policy for $3,500 lapsing January 27, 1954. The $25,000 policy was permitted to lapse around March 15, 1955, upon the insured's acceptance

of the policy, now in suit, which he carried until the time of his death. By the terms of this policy, upon proof of death of the insured, no immediate payment was to be made to the beneficiaries but income benefits in the amount of $500 a month would be paid to an expiry date specified in the policy, such monthly payments terminating with the last monthly income payment prior to the date of expiry when a final payment in a lump sum of the proceeds of the policy would be made.

However, the application for the latest new insurance, which Syme had signed, called for family income benefits upon proof of the insured's death of $250 per month to the fixed expiry date with the final payment of the proceeds of the policy in a lump sum on the expiry date, just as in the case of the above-mentioned policy with the $500 monthly benefits. This application is the one whereof a copy is attached to the policy in suit and contains the alleged misrepresentations of the applicant that are the basis of the insurance company's defense. After Syme had signed the application, the insurance company's general agent penned an addendum on the face of it, requesting the insurance company to write, in addition to the policy for which Syme had thus made application, a second policy for a like face amount but with family benefits of $500 per month to the specified expiry date. This addition to the application, as written by the agent, was placed upon the part of the application entitled "Additional Requests" and read as follows: "Date *both* policies January 27th, 1955. One alternative policy—$25,000. Champion with waiver & D. I. with 10 year Family Income period-20-month per 1000. Only *1* policy will be delivered and one will be returned for cancellation." When the agent later came to deliver one or the other of the policies, Syme accepted the one carrying the

larger amount of monthly family benefits. Thus it was that the policy in suit happens to have attached to it a copy of the agent-altered application made for the other policy which Syme did not accept and which was to be returned to the company for cancellation.

Section 318 of The Insurance Company Law of May 17, 1921, P.L. 682, 40 PS § 441 (re-enacting the Act of May 11, 1881, P.L. 20), provides that "All insurance policies, issued by . . . insurance companies . . . in which the application of the insured . . . form part of the policy or contract between the parties thereto, or have any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application *as signed by the applicant* . . .; and, unless so attached and accompanying the policy, no such application . . . shall be received in evidence in any controversy between the parties to, or interested in, the policy, nor shall such application . . . be considered a part of the policy or contract between such parties" (Emphasis supplied).

The foregoing provision was enacted in order to establish uniform rules for determining whether particular promises or statements of an insurance agent are included within the contract between the insurer and the insured: *Frost v. Metropolitan Life Insurance Company,* 337 Pa. 537, 541, 12 A. 2d 309. In speaking of the purpose of the Act of May 11, 1881, P.L. 20, whereof The Insurance Company Law of 1921 is a substantial reenactment, Chief Justice MITCHELL in *Lenox v. Greenwich Insurance Co. of New York,* 165 Pa. 575, 577, 30 A. 940, there expressed what is still regarded as the aim of the legislation, viz., "It is well known that the evil aimed at in this legislation was the custom of insurance companies to put in their blank forms of application long and intricate questions or statements to be answered or made by the applicant, printed usu-

ally in very small type, and the relevancy or materiality not always apparent to the inexperienced, and therefore liable to become traps to catch even the innocent unwary. The general intent was to keep these statements before the eyes of the insured, so that he might know his contract, and if it contained errors, have them rectified before it became too late." This has since been quoted with approval. See, e.g., *Muhlenberg v. Mutual Fire Insurance Company of Sinking Springs*, 211 Pa. 432, 433-434, 60 A. 995. As the statute was passed in the interest of fair dealing, its provisions must be strictly complied with in all respects: *Ellis v. Metropolitan Life Insurance Company*, 228 Pa. 230, 231, 77 A. 460.

The Insurance Company Law expressly provides that the copy of the application, attached to a policy, must be a *correct* copy. If it is not an exact duplicate of what was submitted by the insured, the entire application must be disregarded and may not be used thereafter as the basis of a defense by the insurer: *Ellis v. Metropolitan Life Insurance Company*, supra; *McCaslin v. Metropolitan Life Insurance Company*, 59 Pa. Superior Ct. 475, 476-477. The rule was well stated, as approved, in *McCaslin v. Metropolitan Life Insurance Company*, supra, as follows: "If a correct copy of the application is not attached to the policy, in accordance with the requirements of the Act of May 11, 1881, P.L. 20, it is no part of the contract, and it is to be considered as if no such paper existed and a recovery may be had upon the policy alone [*Muhlenberg v. Insurance Co.*, 211 Pa. 432, 60 A. 995, and other cases cited]." Nor does it make any difference that the use sought to be made of the application bears no relation to the indicated inaccuracy of the copy: *Sandberg v. Metropolitan Life Insurance Co.*, 342 Pa. 326, 20 A. 2d 230; *McCaslin v. Metropolitan Life Insurance Company*, supra, at p. 479.

According to the defendant company the effect of the alteration in this case was merely to convert the application into a request for a policy with larger death benefits than the policy that was specified by the insured in his application. However that may be, the undeniable fact is that the application attached to the policy in suit, which the insured received and accepted, is an entirely different policy than the policy which the application contemplated unaffected by the alteration on the face of the application which the agent made after the applicant's signature had been appended.

Furthermore, The Insurance Company Law expressly provides that the attached application must be "as signed by the applicant". The inviolability of this requirement was accentuated by us in *Sandberg v. Metropolitan Life Insurance Co.*, supra, at p. 328, where we said that "There can be no doubt but that when the Act of 1921 requires that a copy of the application be attached to the policy if it is to be considered a part of the contract, the Legislature meant that the whole application, *as signed by the applicant,* must be attached" (Emphasis supplied). True enough, the insured's signature does appear at the end of the application, but it was placed there before the agent made the alteration which was never authenticated by the applicant's signature. Judged in the light most favorable to the defendant company, the alteration is nothing more than an unsigned declaration and, as such, violates the mandatory requirements of the statute. The effect of a violation of the terms of the Act was forcibly stated in *Sandberg v. Metropolitan Life Insurance Co.*, supra, at p. 329, as follows: "Since [the amendment] was not attached to the policy, as required by the Act of 1921, which is mandatory in its requirement, no other part of the application may be considered as part of the contract."

The defendant's argument that the defect in the application was cured by the insured's ratification of the added statement by his acceptance of the policy and his payment of premiums thereon overlooks the plain and unmistakable wording of the statute that the application appended to a policy must be "as signed by the applicant". There is no provision in the Act authorizing the validation of statements in an application written by a person purporting to act for the applicant. The statutory requirement is that the application must be signed by the applicant; ratification by him is not sufficient. Whether, on general principles of agency law, Syme ratified the alteration is not a permissible issue in the case in view of the positive mandates of the applicable statute.

This court's uniform practice of strictly enforcing The Insurance Company Law so as to exclude altered copies of purported applications for insurance is well illustrated by the case of *Ellis v. Metropolitan Life Insurance Company,* supra. In that case the attached copy of the application incorrectly stated certain answers and omitted some others entirely. We there declared that ". . . unless a correct copy of [the application] was attached to the policy, it could not under the Act of May 11, 1881, P.L. 20, be considered a part of the policy or contract between the parties. The defendant could not have put the incorrect copy in evidence, nor could he require the plaintiff to do so. The Act is intended to protect the policy holder: Lenox v. Greenwich Ins. Co., 165 Pa. 575. It was passed in the interest of fair dealing, and its provisions should be strictly enforced: Pickett v. Pac. Mut. Life Ins. Co., 144 Pa. 79." In *Sandberg v. Metropolitan Life Insurance Co.,* supra, the insured submitted an application for a Whole Life Policy at ordinary premium rates. Later he executed an amendment to his application

wherein he requested a Whole Life Intermediate Rate Policy. The insurer attached the original application to his policy but failed to so attach the amendment. The Court, in excluding the entire application, stated: " 'The omission of a part, which of course includes a supplementary part, operates to exclude the whole' . . . . If the company has suffered an unnecessary loss it has resulted solely from its own negligence." What was there said is equally pertinent here. The guarantees to prospective policy-holders secured by The Insurance Company Law of 1921 are not to be nibbled away by exceptions however justifiable they may appear to be.

In *McCaslin v. Metropolitan Life Insurance Company,* supra, the application executed by the insured stated that the insured's mother died at the age of forty-two. The copy attached to the policy stated that she had died at the age of forty-five. The Court, holding that such a variation was sufficient to exclude the entire application, stated: "The act of 1881 steps in at [this] point and says that the insurer may not put in evidence the application, unless it is correctly copied in the policy, and thereby saves the insurer from being unwarily entrapped . . . . The Act of 1881 is to be applied in accordance with its letter and spirit, although a meritorious defense may be excluded: Morris v. State Mut. Assurance Co., 183 Pa. 563."

The application in this case must be excluded for a further reason. By its own terms, it is a request for an entirely different policy than the one which was issued by the insurance company. As stated previously, Syme expressly requested a policy with a face value of $25,-000 and family income benefits of $250 per month. What he actually received was a policy with a face value of $25,000 and family income benefits of $500 per month   The provision in The Insurance Company

Law, that there must be attached to the policy "correct copies of *the* application" (emphasis supplied), has been interpreted to refer exclusively to the application executed by the insured for the particular policy which was issued: *Fidelity Title & Trust Co. v. Metropolitan Life Insurance Co.*, 305 Pa. 296, 300, 157 A. 614. In that case, the insured made application for a $5,000 policy. Without the applicant's expressed authorization, the insurance agent directed the insurer to issue an additional policy for $10,000. At no time did the insured apply for the latter policy. In the end, he accepted both policies. The Court, in holding that the application for the $5,000 policy was not a part of the contract for the $10,000 insurance coverage, said that "On [the insurance company's] own showing, therefore, it is clear that [the insured] made no written application for the $10,000 policy, nor authorized [the insurance company] to attach thereto a copy of the application for the earlier policy. The taking of a written application, containing the insured's version of his physical history and. condition, was solely for [the insurance company's] benefit, and if it desired to use such application for purposes not authorized in the writing itself, [the insured's] consent was essential. Since [the insurance company] failed to show that such consent had been given, it follows that the application formed no part of the policy on which suit was brought."

Furthermore, the very terms of the policy in suit prevent us from considering an application for a policy different from the one which was finally issued. Thus, the policy provides in General Provision No. 11 that "This policy *and the application therefor,* copy of which is attached hereto and made part hereof, constitute the entire contract between the parties hereto." The policy also provides that "Subject to the terms of the application *for this policy,* upon payment of the first premium,

this policy takes effect . . ." (All above emphases supplied). The application on which the insurance company relies is clearly not an application "for this policy". Consequently, for this additional reason, the application is not admissible in evidence as a part of the contract.

Counsel for the defendant has placed great reliance on the case of *Reeder v. Metropolitan Life Insurance Company*, 340 Pa. 503, 507, 17 A. 2d 879, which permitted the defendant insurance company to use, in its defense, certain misrepresentations contained in an application for a larger policy than that which was finally accepted by the insured. The court, in discussing the plaintiff's contention that the application should be disregarded, stated: "It need only be said in this connection that throughout her pleadings, plaintiff pleaded the policy and the application here in question as the entire contract upon which she based her action, and at no time until now did she claim that the application here involved was not the one upon which the policy issued . . . ." If anything more need be said about that case, it will suffice to add that the attached application contained no alterations and no unsigned declarations. The copy was an exact duplicate of what had been signed by the insured. The *Reeder* case obviously is not presently germane.

Here, the insurance company seeks to rely upon an application containing an alteration unsigned by the applicant and requesting a policy entirely different from the one accepted by the insured. The strict requirements for establishing insurance contracts, as ordained by The Insurance Company Law of 1921 does not permit the inaccurate copy of the application to be introduced as a part of the insurance contract. The insurance company's defense, based on alleged misrepresentations in the copy of the application attached to the policy in suit, is not available to the defendant.

The order appealed from is reversed and the record remanded to the court below with directions to enter judgment against the defendant for such sum as to right and justice may belong, unless other legal or equitable cause be shown to the court below why such judgment should not be so entered.

Mr. Justice BELL dissents.