487 A.2d 36

Esther GREEN

v.

**Dr. Ish K. JUNEJA and Argonaut Insurance Co., Inc., Frank B. Hall and Company of Pennsylvania, Inc.**

**Appeal of ARGONAUT INSURANCE CO., INC., Appellant.**

Superior Court of Pennsylvania.

Submitted June 27, 1984.

Filed Jan. 11, 1985.

Ralph L. Hose, Ardmore, for Juneja, appellees.

Wilbur L. Kipnes, Philadelphia, for Hall, appellees.

Before OLSZEWSKI, POPOVICH and CERCONE, JJ.

CERCONE, Judge:

Esther Green, plaintiff-appellee, filed this action in declaratory judgment to determine the effect of a cancellation of an insurance policy by defendant Dr. Ish K. Juneja. He had purchased the malpractice policy from defendant-appellant Argonaut Insurance Co., Inc. (Argonaut).[1] (In an underlying action, Green sued Dr. Juneja for negligent medical treatment which allegedly resulted in loss of vision in her right eye.) Green filed a Motion for Summary Judgment which the trial court granted and it is from this order that Argonaut appeals.

The basic facts were stipulated. On December 16, 1975, Dr. Juneja submitted an application for medical liability insurance to Argonaut. He was notified on February 19, 1976, that it was accepted and that a policy from January 1 to April, 1976 was in effect. He paid the premium on August 4, 1976. On August 14, 1976, Dr. Juneja wrote to Argonaut and requested cancellation of the aforementioned policy on grounds that he had not practiced medicine during the period in question. (It was stipulated that he did indeed practice medicine at that time.) Without an investigation by Argonaut, his policy was cancelled "flat" as if it were never issued and the premium was applied to a new policy effective July 1, 1976. Then, in December 1977, Green sued Dr. Juneja for allegedly negligent medical care in January and February 1976. It is plaintiff Green who seeks the determination as to whether Dr. Juneja is indeed covered.[2]

1. Frank B. Hall and Co. of Pennsylvania, Inc., has not submitted a brief in this appeal, but adopts as its own the brief for appellant, Argonaut. Frank B. Hall and Co. is an insurance brokerage which is administrator of the Pennsylvania Medical Society's professional liability insurance program which is underwritten by Argonaut.

2. Section 7533 of the Declaratory Judgments Act, 42 Pa.C.S.A. § 7533, defines the interest required by a party seeking a declaratory judgment by providing in pertinent part as follows:

Any person ... whose rights, status, or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations thereunder.

■ The trial court found, pursuant to Green's Motion for Summary judgment on the pleadings,[3] that Argonaut's policy, number PM00707, issued to Dr. Juneja, was in full force and effect during the relevant period, from January 1, 1976, to April 1, 1976, and that the retroactive cancellation of the policy on August 17, 1976, was void and without effect. Essential to the court's reasoning was the mandatory nature of malpractice coverage as set forth in the Health Care Services Malpractice Act, 40 P.S. § 1301.701.[4] The court referred to one of the purposes of the Act, to benefit those persons who have "sustained injury or death as a result of tort or breach of contract by a health care provider." 40 P.S. § 1301.102. Thus, it concluded that the basic purpose of the Act, to protect the public, would fail if Argonaut were to be released from its contractual obligations. The court found that Green was a third party beneficiary who would be unjustly deprived of a possible recovery by retroactive cancellation of the policy. The court referred to 40 P.S. § 1301.1002, Cancellation of insurance policy, and found that because Argonaut did not notify the insurance commissioner in accordance with this section, that the cancellation did not occur. Finally, the court found there was no evidence in the record of fraud on Dr. Juneja's part, which Argonaut argues would render the insurance contract void *ab initio.*

■ Preliminarily, we note that under Pa.R.C.P. 1035, summary judgment may only be entered where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Acker v. Palena*, 260 Pa.Super. 214, 393 A.2d 1230 (1978).

---

3. A motion for summary judgment is appropriate in declaratory judgment proceedings. Pa.R.C.P. 1035, *Pa. P.U.C. Bar Assoc. v. Thornburgh*, 62 Pa.Cmwlth.Ct. 88, 434 A.2d 1327 (1981).

4. Act of October 15, 1975, P.L. 390, No. 111, §§ 101 *et seq., as amended by* the Act of December 14, 1979, P.L. 562, No. 128, 40 P.S. §§ 1301.101 *et seq.* (Supp.1984–85).

"In addition, we are mindful that in considering a motion for summary judgment the court must examine the record in the light most favorable to the non-moving party; that the court's function is not to decide issues of fact but merely to determine whether any such issues exist; and that all doubts as to the existence of a genuine issue of material fact must be resolved in favor of the non-moving party [citations omitted]". *Taylor v. Tukanowicz*, 290 Pa.Super. 581, 586, 435 A.2d 181, 183 (1981).

We are persuaded that the decision of the trial court was correct in that the insurer did not comply with the cancellation procedures of the Health Care Services Malpractice Act, 40 P.S. § 1301.1002, and because of that, the retroactive cancellation of malpractice insurance as to Dr. Juneja was not effective.[5]

Central to our disposition of this issue is the interpretation to be given to Section 1301.1002.

Any termination of a professional liability insurance policy by cancellation, except for suspension or revocation of the insured's license or approval by the Commonwealth to provide health care services or for reason of nonpayment of premium, is not effective against the insured covered thereby, unless notice of cancellation shall have been given within 60 days after the issuance of such contract of insurance against the insured covered thereunder and no cancellation shall take effect unless a written notice stating the reasons for the cancellation and the date and time upon which termination becomes effective has been received by the commissioner at his office. Mailing of such notice to the commissioner at his principal office address shall constitute notice to the commissioner.

Appellant Argonaut argues that this provision was intended by the legislature to impose a notice requirement on an insurer only when the insurer cancels a malpractice

---

5. A reviewing court may affirm a decision of the trial court if the result is correct on any ground. *E.J. McAleer & Co., Inc. v. Iceland Products, Inc.*, 475 Pa. 610, 381 A.2d 441 (1977).

policy. Argonaut looks to the legislative history of this provision as it appears at Legislative Journal, Vol. I, No. 66 at 2281 (July 21, 1975).

"MR. TAYLOR: Mr. Speaker, these amendments are ageed to, and I did not get a chance to get them circulated on all the members' desks, but I will. What the amendment does in essence is to put the cancellatin notice in line with the cancellation that is presently in effect under our liability coverage. It says the notice of cancellation shall be given within 60 days after the issuance of such contract.

Now what it really does is, it stops an insurance company from arbitrarily cancelling the insurance coverage after 60 days. In other words, once the policy has been issued, they have 60 days in order to send out notice of cancellation. If they fail to cancel within 60 days, the insurance will stay in effect for the term of the contract."

■■■ While this reference to the General Assembly's floor discussion does illustrate a purpose behind the cancellation notice provision, it by no means presumes to state the only purpose. The language of § 1002 is clear and unambiguous that notice shall be given to the insurance commissioner upon *any termination* of a professional liability policy. Under basic rules of statutory construction, the plain meaning may not be ignored. 1 Pa.C.S.A. § 1921(b).[6] Contrary to Argonaut's contention, this plain meaning is fully consistent with the legislative intent to prevent arbitrary cancellations by insurers.

Moreover, to require an insurer to notify the commissioner in the event of *any termination,* fulfills one of the general purposes of the Act as it appears at Section 102, that it is to benefit those persons who have "sustained injury or death as a result of tort or breach of contract by a

---

6. Plain words of statute cannot be disregarded where language is free and clear from all ambiguities. *Commonwealth v. Patchett,* 284 Pa.Super. 252, 425 A.2d 798 (1981).

health care provider." This purpose is upheld upon notice of cancellation effectuated by an insurer or by an insured. Once a health care provider becomes uninsured in derogation of the mandate of the Act, regardless of who instigates the cancellation, a potential victim of negligence by that health care provider is at risk of being uncompensated.

Therefore, because the insurer did not comply with Section 1301.1002 of the Health Care Services Malpractice Act, the cancellation was not effective and Dr. Juneja was covered by insurance during January to April 1976.[7]

Argonaut raises a number of other issues on this appeal, all of which this court concludes are without merit. It cites to various opinions of the Attorney General which hold the Act as inapplicable to physicians who do not practice within Pennsylvania. However, it was stipulated at trial that Dr. Juneja did practice medicine during the relevant period regardless of what he represented to Argonaut. This court cannot disregard this stipulation.

Argonaut also argues that Juneja's representation that he did not practice medicine at that time was a fraud on Argonaut and Pennsylvania, and that, therefore, the insurance contract was void from the beginning. However, the principles relating to the voiding of an insurance policy in the case of misrepresentation contained in an application for insurance, are not applicable in this case. *Underwood v. Prudential Insurance Co. of America,* 241 Pa.Super. 27, 359 A.2d 422 (1976). Here it was the attempted termination of the insured that was allegedly fraudulent, not its initiation. Appellant has not persuaded us that voiding the

7. The purpose of a statutory provision ... providing that an insurance carrier cannot cancel ... except on ... prior notice to the appropriate commission is to give assurance to the commission that the protection contemplated by the act or statute is provided. G. Couch, Insurance 2d, § 67:87 (1983).

insurance contract *ab initio* would in any way be an appropriate remedy.[8]

Order affirmed.

POPOVICH, J., concurs in the result.

**8.** While we premise our affirmance on the failure of the insurer to notify the insurance commissioner in accordance with 40 Pa.C.S.A. § 1301.1002, we want to emphasize that the cancellation of the liability policy was also not valid since it would be inequitable to permit the insurer to cancel the policy after the injury was suffered. This is so in light of the mandatory nature of such coverage to protect the public and also under well-established principles of insurance law.

A valid cancellation of an insurance policy relieves the insurance company from liability for subsequent losses, but does not operate to relieve the company from liability incurred prior to the date of cancellation.

18 Pennsylvania Legal Encyclopedia § 196 (1959).

While it is true that the insured requested the cancellation of his policy, the principle withstands this distinction, since the plaintiff in the instant action is in the posture of a third party beneficiary. Thus, it is this court's conclusion that, even if the proper notice had been given in this case, it would not have been effective since it was an attempted retroactive cancellation after the injury had occurred.