540 A.2d 289

**A.G. ALLEBACH, INC., Appellant,**

**v.**

**Joseph W. HURLEY and Norfolk Dedham Mutual Fire Insurance Company and Utica Mutual Insurance Co.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1988.

Filed April 4, 1988.

42

Philip D. Weiss, Norristown, for appellant.

Margaret S. Lurio, Philadelphia, for Utica, appellee.

Before CIRILLO, President Judge, and TAMILIA and HESTER, JJ.

CIRILLO, President Judge:

This is an appeal from an order of the Montgomery County Court of Common Pleas of March 10, 1987, denying the post-trial motions of A. G. Allebach, Inc. (Allebach), and entering judgment for Utica Mutual Insurance Company (Utica). Because we find that appellant Allebach's arguments are without merit, we affirm the order of the trial court.

This case arises from an insurance policy sold by Joseph W. Hurley, an insurance agent, to Allebach, a company in the business of selling and repairing heavy vehicles. The policy purported to cover Allebach for losses due to fire. Allebach at that time rented the building that it occupied. A fire damaged the rented building, vehicles that were in the process of undergoing repairs, and Allebach's own property. Allebach then discovered that its insurance policy did not cover its liability to the owner of the rented building or to the owners of the vehicles undergoing repairs, and that the policy did not cover damage to certain of its own property or business interruption.

On June 3, 1974, Allebach notified Hurley by letter that a suit would be brought against him. On July 25th of that year, Hurley applied to Utica for an errors and omissions policy. The policy application contained a question which specifically asked whether or not the applicant knew of any circumstances or allegations which "may result in any claim being made against the agency, the predecessors in business or any present or past partners[.]" If the applicant answered "yes" to this question, the application required

that a statement of complete details be appended to it. Hurley answered this question in the negative on one application, and did not answer it at all on a second. A provision of the policy stated that all questions had to be answered, and that any question left blank would be deemed to have been answered in the negative. Based upon Hurley's representations, Utica issued a claims-made policy to him which was to run from July 29, 1974, to July 29, 1975.

On September 11, 1974, Allebach filed its first complaint against Hurley claiming that Hurley had failed to provide it with adequate insurance coverage. That complaint was dismissed without prejudice because damages had not yet accrued. A second complaint which included damages was filed and later amended to allege additional damages. On June 23, 1975, Hurley contacted Utica and asked to renew his policy. Despite the fact that two complaints had been filed against him, he again answered the question in the application concerning the existence of claims being made in the negative. The policy was renewed on the basis of his representations.

Notice of the impending law suit was given to Utica by Hurley's co-defendant on May 24th of 1976. Hurley again attempted to renew his policy in June of 1976, and this time made mention of the claim against him. Utica decided to rescind Hurley's policy because of the past misrepresentations on his part, and returned with interest all the premiums he had paid since the policy's inception. Utica notified Hurley that it would neither indemnify nor defend him in the law suit. At that point, Hurley reached a settlement with Allebach, assigning to Allebach whatever rights he had against Utica in return for Allebach's agreement not to enforce the judgment entered against him.

Allebach then instituted garnishment proceedings against Utica. The issue of whether or not recision of the policy was proper was submitted to the trial court by counsel on an agreed statement of facts. A verdict was entered for Utica. Allebach's post-trial motions were denied, and it appealed to this court.

Allebach makes four arguments on appeal. Firstly, it claims that the trial court erred in finding that an insurer could rely on the recision of the errors and admissions policy to defeat Allebach's rights in a garnishment claim. Secondly, Allebach argues that the trial court erred in finding that the claim was not made during the policy period and adequate notice had not been given to the insurer, Utica. Thirdly, Allebach argues that it was error for the trial court to hold that Utica's claim that Hurley misrepresented material facts when applying for the policy was effective against it. Lastly, Allebach claims that the trial court erred in finding that an agreed verdict was not binding upon Utica.

In examining an appeal from a judgment entered in a non-jury trial, the findings of the trial court are accorded the same weight and effect as the verdict of a jury, and will not be reversed absent an abuse of discretion or a finding that the evidence does not support the verdict. We, as the appellate court are limited to a determination of whether or not the trial court's findings are supported by competent evidence and whether the trial court erred as a matter of law. Further, the evidence must be viewed in the light most favorable to the verdict winner; all the evidence and inferences favorable to him are taken as true, and all the unfavorable inferences rejected. *Brenna v. Nationwide Insurance Co.*, 294 Pa.Super. 564, 567–68, 440 A.2d 609, 611 (1982). We find that, viewing the evidence in the light most favorable to the verdict winner, along with the favorable inferences that may be reasonably drawn from that evidence, the evidence supported the trial court's finding that recision of the policy was proper in this case, as the insured made material misrepresentations in the policy application.

Allebach complains that allowing Utica to employ all the defenses against it in a garnishment action that Utica would have been able to command in an action against it by Hurley places it on the horns of a great dilemma. According to Allebach, garnishment is its only recourse, since it is unable to bring a direct cause of action against the insurer

under Pennsylvania case law and 40 P.S. § 117. If it elects a garnishment action, however, it is precluded from recovering in circumstances where Utica is allowed to raise the defense of misrepresentation as it could have done against Hurley. Allebach claims that the law does not permit it to be placed in such a position because the insurer bears the burden of proving a policy defense, and because of an exception to the rule that the judgment creditor stands in the shoes of the judgment debtor.

Allebach argues that the case of *Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560 (3rd Cir.1976), supports its claim that the law will not allow the garnishee to use defenses against it that could be raised against the first creditor where fraud is present. We do not find this argument persuasive. In *Jamison*, the verdict winner attempted to garnish a claim owed the insured by the insurer after the insurer and the insured had already settled the claim. The argument was made that since the insured had already settled with the insurer, and the court had dismissed the action with prejudice, the insured was bound by res judicata and precluded from relitigating its claim against the insurer, as was the verdict winner, who was, in effect, the assignee. The verdict winner argued that an exception to the rule set out in *Folmar v. Shaffer*, 232 Pa.Super. 22, 332 A.2d 821 (1974) should apply. Under Pennsylvania law, an assignee's rights are not extinguished where the assignor has acted fraudulently. *Id.*, 232 Pa.Superior Ct. at 25, 332 A.2d at 823. The Third Circuit Court of Appeals held that the verdict winner had presented uncontradicted evidence that the insured was hopelessly insolvent at the time of the settlement. The court pointed out that in Pennsylvania, a conveyance is fraudulent when an insolvent conveys property for less than fair consideration. According to the court, the settlement of the claim for less than the amount it was worth was analogous to a fraudulent conveyance. *Jamison*, 536 F.2d at 565.

Allebach attempts to argue that the return of the premiums to Hurley was a fraudulent conveyance similar to

that in the *Jamison* case. Allebach's argument is specious, and ignores the facts as set out in that case. No similarity exists between the return of premiums by the insurer upon the realization that the insured had misrepresented himself in the application, and the uncontradicted deposition testimony in *Jamison* that the insured was insolvent and attempted to settle a suit for less than it was worth. The actions in the *Jamison* case fit into the definition of fraudulent conveyance as set out in that case, the return of premiums here do not. Further, the verdict winner in that case was able to set out evidence tending to show fraud on the part of the insurer and insured. Allebach was unable to allege *any* such evidence here. The mere recision of a policy which has been issued to the insured upon the basis of material misrepresentations does not rise to the level of fraud.

This court has held that where no policy clause or statutory provision allows suit by a third party against an insurer, the remedy available to the third party is to issue an attachment execution, naming the insurer as the garnishee. *See Ferguson v. Manufacturers' Casualty Insurance Co.*, 129 Pa.Super. 276, 280, 195 A. 661, 663 (1938). We have found no case, nor does Allebach cite any to us, to support its claim that in such an instance the ordinary laws of garnishment would not apply. Allebach has chosen its theory of recovery, and must abide by the case law governing that theory.

■ We do not fully understand Allebach's argument that because the insurer bears the burden of proving its policy defense, Allebach is precluded from submitting to the laws of garnishment. In any case, although we recognize that where the insurer relies upon an exclusion provision in the policy, or upon the breach of a condition of the policy as its defense, the insurer bears the burden of proving that defense, *Bianco v. Concepts "100" Inc.*, 291 Pa.Super. 458, 465, 436 A.2d 206, 209 (1981), we find that rule has no applicability to the instant case. The insurer here is not attempting to rely upon the policy, but relies upon the fact

that there *is no* policy. Clearly, it is the insurer's burden to prove misrepresentation here, but that assumes that the insurer/garnishee can utilize its defenses as against its first creditor, in this case, Hurley.

Allebach also argues that the defense of misrepresentation should not have been available to Utica, and that therefore, Utica should not have been permitted to rescind the policy. Allebach argues: (1) that Pennsylvania statute 40 P.S. § 441 bars a defense based on false representation unless the insurer can show that the application attached to the policy was an exact copy, and that that is not the case here; (2) that the elements of misrepresentation were not proven; and (3) that Utica was precluded from rescinding the contract because Allebach was a third party beneficiary of the insurance policy. We find these arguments to be meritless.

■ Under 40 P.S. § 441, the insurer is precluded from using as evidence the application attached to the policy of an insured unless that application is a true and correct copy of the original:

**§ 441. When application, constitution, by-laws and rules are considered part of policy**

All insurance policies, issued by stock or mutual insurance companies or associations doing business in this State, in which the application of the insured, the constitution, by-laws, or other rules of the company form part of the policy or contract between the parties thereto, or have any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application as signed by the applicant, or the constitution, the by-laws, or other rules referred to; and, unless so attached and accompanying the policy, no such application, constitution, or by-laws, or other rules shall be received into evidence in any controversy between the parties to, or interested in, the policy, nor shall such application, constitution, by-laws, or other rules be considered a part of the policy or contract between the parties.

40 P.S. § 441. Pennsylvania courts have interpreted this provision strictly, in accordance with the purpose behind the act. "The Act is intended to protect the policy holder.... It was passed in the interests of fair dealing, and its provisions should be strictly enforced." *Syme v. Bankers National Life Insurance Co.*, 393 Pa. 600, 609, 144 A.2d 845, 850 (1958) (citations omitted). The Pennsylvania Supreme Court in *Syme* pointed out that the "evil" aimed at by the legislation was the practice by insurance companies of putting long and intricate questions or statements to be answered or made by the applicant in their applications. These were printed in small type; their relevancy was not immediately apparent to the inexperienced. " 'The general intent was to keep these statements before the eyes of the insured, so that he might know his contract, and if it contained errors, have them rectified before it became too late.' " *Id.*, 393 Pa. at 607, 144 A.2d at 849 (quoting *Lenox v. Greenwich Insurance Co.*, 165 Pa. 575, 577, 30 A. 940, 941 (1894).

The courts have realized, however, that it is also necessary to use reason when interpreting this provision:

[A] literal interpretation of the Act requiring every word to be accurate and exact will not be adopted and applied, if and when it produces a result that is unreasonable or absurd.... For example, an erroneous insertion or omission of "the" or "an", or the misspelling of a word, or an erroneous date if such an error is otherwise immaterial, or if there be other trivial errors, such a copy, literally speaking, would not be a correct copy. However, while the Act must be strictly construed in favor of the insured, we believe it must nevertheless be reasonably interpreted.

*Ross v. Metropolitan Life Insurance Co.*, 403 Pa. 135, 142–43, 169 A.2d 74, 78 (1961). In *Ross*, the supreme court construed the act to reasonably mean that a copy was not a correct copy if it was not dated and signed by the applicant. *Id.* In *Prudential Insurance Co. v. Pagano*, 407 Pa. 473, 181 A.2d 319 (1962), the supreme court held that where two Part II's of an application had been completed, but only one

had been attached to the policy, and when that copy was for all practical purposes identical to the other copy, the statute had been satisfied. *Id.*, 407 Pa. at 475, 181 A.2d at 322. In *Syme* itself, upon which Allebach relies for its argument, we note that the application was discarded because it was unsigned by the applicant. The application requested a policy entirely different from the one accepted by the insured. *Syme*, 393 Pa. at 612, 144 A.2d at 852.

Consideration of the supreme court's decisions in this area along with the purpose of the act as described in those decisions, leads us to agree that the act must be applied reasonably. In the instant case, according to Allebach, the fact that two copies of Hurley's application for insurance existed in the files, one which replied "no" to the question concerning the existence or possibility of any claims against the applicant, and one in which the question was not answered, precluded Utica from basing its defense upon the application. Allebach claims that the copy attached to the policy was not an exact copy, and that Utica is barred by the statute from basing its defense on that copy. We disagree. Where the difference between the actual application and the copy appended to the policy can be considered trivial, and does not tend to mislead the insured, there can be no question that the copy of the application is a correct one as set forth in the statute. The copy need not be exact.

Viewing the evidence in the light most favorable to the verdict winner, the two applications in question here were, for all practical purposes, the same. Although the one application was blank in some places, it is clear that at the top of the application itself that failure to fill the blanks on the form would be construed as a negative response. There is no question that Hurley signed both forms, or that he received the policy that he had requested. We note further that Hurley was an insurance agent, and therefore familiar with application forms and company practices. This is not a case in which the insurance company is attempting to confuse an ignorant insured with a long and complicated policy application. We hold that any dissimilarity in the

policy was trivial, and sufficiently compensated for by the language which provided that unanswered questions would be held to have been answered in the negative.

■ Allebach next argues that even if the application is held to be sufficiently correct to avoid the prohibition of the statute, Utica has failed to carry its burden of proving misrepresentation, and therefore should not have been permitted to rescind the policy. In order for an insurer to carry its burden of proving misrepresentation, it must show that the representation was false, that the subject matter was material to the risk, and that the applicant knew it to be false and made the representation in bad faith. *Allstate Insurance Co. v. Stinger*, 400 Pa. 533, 537, 163 A.2d 74, 78 (1960); *Piccinini v. Teachers Protective Mutual Life Insurance Co.*, 316 Pa.Super. 519, 529, 463 A.2d 1017, 1023 (1983).

■ Allebach argues that if Hurley had knowledge of any claim at the time that the application was made, it was from Allebach's letter of June 3, 1974 informing him that a claim might be made in the future. Because the complaint which ultimately issued was dismissed, Allebach argues that that letter is not material to the instant case, and that therefore Utica has failed to carry its burden of proving that the subject matter was material to the risk. Allebach completely misunderstands the standard involved here. The argument that it has made is not even remotely connected with the concept of materiality of the risk. Information is said to be material if knowledge or ignorance of it would naturally influence the judgment of the insurer in issuing the policy, in estimating the degree and character of the risk, or in fixing the premium rate. *Baldwin v. Prudential Insurance Co.*, 215 Pa.Super. 434, 437, 258 A.2d 660, 662 (1969). There is no question from the record that the representations made by Hurley concerning the existence of claims against him would naturally influence the judgment of an insurer in issuing a claims made policy. Joseph Thackaberry, an underwriter for Utica, testified that he relied upon DiBonaventura's representations in deciding

whether or not to issue a claims-made policy, because a claim outstanding against the potential insured could be reported against Utica during the policy period. The possibility that a claim could be made within the policy period would have at the least placed restrictions on Hurley's policy, or increased his premium. The trial court's finding that this information was material to the risk is supported by competent evidence.

■ Allebach also makes the argument that Utica failed to show that the representations were false, and that Hurley knew of their falsity when they were made. Allebach argues that because the first complaint filed against Hurley was dismissed, and it was to that complaint that the letter of June 3rd referred, it was impossible for Hurley to have knowledge of the future claim upon which it contends this garnishment proceeding is based. This argument is unsound. The fact that the complaint that was filed as warned in the June 3rd letter was later dismissed sometime after September of 1974 does not prevent Hurley from having knowledge at the time he completed the application in June of circumstances from which a claim could arise. The application question involved in this appeal does not ask whether the applicant knows of any claims, but whether he knows of circumstances that could give rise to a claim. The inference to be drawn from these facts is that Hurley did have knowledge of such circumstances. He went so far as to engage an attorney to represent him on the basis of Allebach's letter. We hold that the trial judge did not abuse his discretion in finding from the stipulated facts that the statements were false and that Hurley knew of their falsity. Further, we note that the trial judge was well within his discretion to disregard Hurley's self-serving statements in his notice to the insurer made in 1976 to the effect that he had no knowledge of any claim when the application was made.

Allebach argues lastly that bad faith was not proven because it is possible that Hurley had left the question blank, and the answer was filled in by some other person.

We merely note again that we must consider all facts in the light most favorable to Utica, the verdict winner. We also note that Allebach has failed to present facts which would have shown any impropriety here. Further, as has been stated, the application provided that should any questions be left blank, they were assumed to have been answered in the negative. It would not have been error for the trial court to have drawn the inference here that Hurley left the space blank knowing that it would be considered as a negative response. As we uphold the trial court's finding that Hurley knew of the impending claim when he completed the application, whether he chose to answer or leave the space blank does not affect our analysis. As this court stated in *Baldwin*, " 'It is sufficient to show that [the representations] were false in fact, and that the insured knew they were false when he made them ... since an answer known by an insured to be false, when made is presumptively fraudulent.' " *Baldwin*, 215 Pa.Super. at 438, 258 A.2d at 662 (quoting *Evans v. Penn Mutual Life Insurance Co.*, 322 Pa. 547, 553, 186 A. 133, 138 (1936). We therefore hold that Utica sustained its burden of proving misrepresentation, and that the trial court did not err in allowing recision on that ground.

Allebach then argues that Utica should have been precluded from rescinding the policy because it, Allebach, was a third party beneficiary of the contract between Utica and Hurley. Allebach argues that to allow recision would violate a strong public policy of protecting the rights of injured parties. In support of its contentions, it cites *Philadelphia Forrest Hills Corp. v. Bituminous Casualty Corp.*, 208 Pa.Super. 461, 222 A.2d 493 (1966) and *Green v. Juneja*, 337 Pa.Super. 460, 487 A.2d 36 (1985). We find neither of these cases to be apposite. In *Bituminous Casualty*, the insured was adjudicated a bankrupt, and the creditor instituted a suit against the insurer. Despite an earlier settlement before the bankruptcy of the insured, the court allowed the creditor to proceed as a third party beneficiary. The policy contained a provision which stated

that bankruptcy of the insured would not relieve the insurer of its obligation under the policy. The court held that where the policy permits suit, the injured creditor may be considered a third party beneficiary entitled to maintain a direct action against the insurer. *Bituminous Casualty*, 208 Pa.Super. at 463, 222 A.2d at 494.

In *Green*, the insured attempted to cancel his medical malpractice insurance after the claim arose. The court was concerned with compliance with cancellation procedures of the Health Care Services Malpractice Act, and whether or not retroactive cancellation of the policy was effective. After an analysis of these issues, the court refused to discuss the issue of misrepresentation of the insured, since the question went to the termination of the policy, not its inception. *Green*, 337 Pa.Super. at 466, 487 A.2d at 40. The court pointed out that although it had affirmed the trial court's decision that the policy cancellation was waived on the basis of the insurer's failure to notify the insurance commissioner of the cancellation, the cancellation was also not valid because to allow the insurer to cancel the policy after the injury would have been inequitable to the injured person. *Id.*, 337 Pa.Superior Ct. at 467 n. 8, 487 A.2d at 40 n. 8. This, however, speaks only to the cancellation of a policy, not to the voiding of a policy *ab initio*. The instant case involves the recision of the policy, that is, a finding that the policy was void *ab initio*, and not a cancellation of that policy once the injured party attempted to bring suit.

While the public policy behind the mandatory nature of certain types of insurance, for example, insurance in the health fields, *see Green, supra,* and automobile insurance, *see Ferguson v. Employers Mutual Casualty Co.*, 254 S.C. 235, 174 S.E.2d 768 (1970), precludes the cancellation of a policy when the third party has already been injured, Allebach has not made any argument to us that it was compulsory for an insurance agent to have an insurance policy to cover errors and omissions. As the *Ferguson* court stated:

The primary purpose of compulsory motor vehicle liability insurance is to compensate innocent victims who have

been injured by the negligence of financially irresponsible motorists. Its purpose is not like that of ordinary liability insurance.... The injured person's rights against the insurer are not derived through the insured as in the case of voluntary insurance. They are statutory and become absolute on the occurrence of an injury covered by the policy.

*Ferguson*, 254 S.C. at 242, 174 S.E.2d at 771. In this case, the rights of the injured entity, Allebach, did not have its rights vest upon the injury. No public policy as set out by statute requires this conclusion. As in any situation involving voluntary insurance, Allebach's rights against the insurer are derived through the insured. Public policy does not require Allebach to be treated as a third party beneficiary here.

Further, in the instant case, the creditor, Allebach, has cited no language in the policy which would allow it to bring suit as a third party beneficiary. We hold that *Folmar v. Shaffer, supra,* controls here. As in that case, "[appellants] have not sued appellee as the insurer; they have only served it as garnishee. The position they have chosen is that of attaching creditors, not third party beneficiaries. Thus regardless of the wording of the policy, the law of garnishment applies." *Folmar,* 232 Pa.Super. at 24, 332 A.2d at 823. Under the law of garnishment, the garnishee is in the same relation to the attaching creditor as to the former creditor, and may assert any defense against the attaching creditor that it could against the former creditor. *Almi, Inc. v. Dick Corp.,* 31 Pa.Commw. 26, 34–35, 375 A.2d 1343, 1348 (1977). The trial court did not err in finding that the defense of misrepresentation was effective against Allebach.

Allebach's second and fourth arguments are premised upon the possibility that this court might find Utica to be obligated to insure Allebach. Because we find that the trial court did not err in finding that the policy was properly rescinded and therefore void from its inception, we will not consider those claims.

Order of the trial court is affirmed.