SWIF, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (HERING, AMERICAN EAGLE EXPRESS, and Liberty Mutual Insurance Company), Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 15, 2003.

Decided Oct. 8, 2003.

Stephen J. Harlen, Philadelphia, for petitioner.

John P. Meyers, Plymouth Meeting, for respondent, Liberty Mutual Insurance Co.

Gerald A. McHugh, Jr., Philadelphia, for respondent, R. Hering.

Howard J. Bashman, Philadelphia, for respondent, American Eagle Express.

BEFORE: SMITH–RIBNER, Judge, LEADBETTER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

The State Workers' Insurance Fund (SWIF) petitions for review of the March 13, 2003 order of the Workers' Compensation Appeal Board that affirmed the order of the Workers' Compensation Appeal Judge (WCJ) finding SWIF to be the responsible insurance carrier for injuries sustained by Robert Hering (Claimant). In this appeal, we are asked to consider whether American Eagle Express (Employer) misrepresented the nature of its workforce covered by the workers' compensation policy at issue, thereby rendering the policy void for the time period in which Claimant sustained his injuries.

Employer is in the business of providing courier services/package delivery to various customers. Prior to 1992, Employer's business was headquartered in Philadelphia and SWIF was its sole workers' compensation insurance carrier. In August 1992, Employer moved its headquarters to Claymont, Delaware, where it continues to dispatch its employees and nearly 100 independent contractors for delivery in several states. Although its headquarters are now located in Delaware, Employer still has employees and independent contractors in Pennsylvania. Once it moved to Delaware, Employer obtained workers' compensation insurance through Liberty Mutual Insurance Company (Liberty Mutual), but continued to insure its Pennsylvania employees through SWIF.

On occasion, Employer will hire an independent contractor as an "employee" for the day, where the "employee" will have use of a company vehicle and Employer will pay all costs associated therewith (e.g., tolls, gas, maintenance). Claimant was generally used as an independent contractor; however, on June 4, 1994, he was hired as an employee for that day. While returning to Employer's facility after making a delivery using Employer's vehicle, Claimant was seriously injured when a tractor-trailer slammed into the back of the truck on Interstate 95. As a result of the accident, Claimant was rendered a quadriplegic.

On March 9, 1995, Claimant filed a claim petition for workers' compensation benefits for the injuries he sustained as a result of the accident. SWIF filed a petition to join additional defendant Liberty Mutual and the matter was assigned to the WCJ. Liberty Mutual filed an answer to SWIF's petition to join, specifically denying that it was the responsible carrier.

By interim order dated July 1, 1996, the WCJ bifurcated the matter into two issues: (1) whether jurisdiction over Claimant's petition was proper where Claimant instituted an action in the United States District Court for the District of Delaware in the nature of a declaratory judgment against Liberty Mutual for workers' compensation coverage and (2) whether the workers' compensation insurance policy issued by SWIF for Employer in Pennsylvania during the time period of December 31, 1993 to December 31, 1994 covered Claimant's June 4, 1994 injuries.[1]

---

1. It appears that the WCJ's interim order contained a typographical error in that the effective dates for the SWIF policy were listed as December 1, 1993 through December 1, 1994. The record shows that the effective dates of the policy were December 31, 1993 through December 31, 1994. (R.R. 19a)

Before the WCJ, SWIF contested that Claimant was covered under Employer's workers' compensation insurance policy because Claimant fell within the risk classification for parcel-delivery, category 808.[2] SWIF argued that Employer misrepresented the nature of its workforce to SWIF by indicating that it did not have any category 808 employees. Based on that representation, SWIF assessed a nominal estimated payroll of $1,000 per year to category 808, which added only $160 to Employer's annual premium. SWIF contended that it relied on Employer's misrepresentation to its detriment and, therefore, the policy was void.

Claimant ultimately withdrew his claim against Liberty Mutual in the United States District Court of Delaware. Consequently, the WCJ did not address whether Pennsylvania was the proper forum in which Claimant could bring an action for workers' compensation benefits. With regard to the second issue, the WCJ found that SWIF had issued a three-page policy providing workers' compensation benefits to Employer effective December 31, 1993 through December 31, 1994 that included coverage for category 808 employees. The WCJ based her determination on review-

ing the policy in question, the parties' past business relationship, documents from SWIF and its agents, and documents from the Pennsylvania Compensation Rating Bureau (Bureau).

Additionally, the WCJ found that SWIF could not assert a defense of misrepresentation because it failed to comply with former Section 318 of The Insurance Department Act of 1921 (Insurance Act).[3] The WCJ thus concluded that SWIF was the responsible insurance carrier for the time period of December 31, 1993 through December 31, 1994 for Employer's employees classified as category 808 and that Claimant's claim against SWIF was not barred for lack of jurisdiction.[4]

The only remaining issue on the claim petition was whether Claimant was an employee at the time of his injury or an independent contractor. Hearings ensued before the WCJ and both parties presented evidence in support of their respective positions. The WCJ ultimately concluded that at the time of the injuries, Claimant was an employee and not an independent contractor.

On appeal, the Board agreed that Section 318 of the Insurance Act prevented

---

2. For workers' compensation insurance purposes, jobs are classified into certain "risk" categories and policy premiums are determined by the amount of the employer's estimated payroll for that category. For example, on the policy at issue, Employer had an estimated payroll of $150,000 for salesman (category 951) in 1994 and the rate of insurance for that position was .96 cents per $100 of payroll. Therefore, $1,440 of Employer's premium was assessed for workers' compensation insurance covering Employer's salesmen. For category 808 employees, the estimated payroll was set by SWIF at $1,000, at rate of $15.99 per $100 of payroll, for an annual premium of $160. *See* R.R. 30a–31a.

3. Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. § 441. Former Section 318 provided that all insurance policies in which the appli-

cation of the insured, the constitution, by-laws or other company rules form part of the policy were required to have correct copies of the aforementioned documents attached to the insurance policy. Failure to attach these documents barred their admittance as evidence in any controversy between the parties. The current version of Section 318 provides that "[n]o statement made by the insured shall be received in evidence in any controversy between the parties ... unless a copy of the document containing the statement is or has been furnished to such person ...." 40 P.S. § 441.

4. By order dated July 1, 1996, the WCJ dismissed SWIF's petition to join Liberty Mutual as a defendant. The appropriateness of that order is not raised in this appeal.

SWIF from relying on the policy to show Employer's alleged misrepresentation because it failed to attach a copy of Employer's constitution, by-laws or other company rules to the policy. However, the Board further determined that SWIF could rely on other admissible evidence to prove its assertions. Accordingly, the Board remanded the matter to the WCJ for consideration of additional evidence submitted by SWIF. The Board further affirmed that portion of the WCJ's order concluding that Claimant was injured in the course and scope of his employment with Employer.

On remand, the WCJ determined that SWIF did not rely on misrepresentations made by Employer. SWIF once again appealed to the Board, which affirmed the WCJ's decision and order. On review, we are limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was made or whether constitutional rights were violated. *Morris Painting, Inc. v. Workers' Compensation Appeal Board (Piotrowski)*, 814 A.2d 879 (Pa.Cmwlth.2003).

As it did before the Board, SWIF argues that the WCJ and the Board erred as a matter of law in failing to conclude that Employer's knowingly false denials of its Pennsylvania employees in category 808 voided coverage for that classification. Generally, contracts are voidable where the formation of the contract was procured by fraudulent misrepresentations of one of the parties. *Metro. Prop. & Liability Ins. Co. v. Ins. Comm'r of the Commonwealth of Pennsylvania*, 525 Pa. 306, 580 A.2d 300 (1990). "In order for an insurer to carry its burden of proving misrepresentation, it must show that the representation was false, that the subject matter was material to the risk, and that the applicant knew it to be false and made the representation in bad faith." *A.G. Alle-*

*bach, Inc. v. Hurley*, 373 Pa.Super. 41, 540 A.2d 289, 294 (1988).

The testimony of John A. Cardamone, Underwriting Operations Manager for SWIF, established that in 1992, when Employer first sought workers' compensation insurance coverage from SWIF, Employer's application was returned by SWIF, with a notation that the category 808 coverage was necessary because that class had been assigned by the Bureau. (R.R. 35a) Thereafter, Employer returned the original application for insurance and a check to cover the cost of the premium. (R.R. 37a)

SWIF''s records then indicated that Employer moved its headquarters to Delaware and no longer needed the category 808 classification for its Pennsylvania employees inasmuch as Employer no longer offered parcel delivery in Pennsylvania. Because the Bureau continued to card Employer for category 808 coverage, SWIF sought additional information to confirm that it was no longer needed. (*Id.*) In September of 1993, SWIF requested an inspection of the Bureau regarding the 808 classification and, in return, the Bureau noted that if such classification was not needed, it should be deleted from the policy. (R.R. 38a–39a) SWIF was further informed by the Bureau that, according to the information provided, individuals who would be assigned category 808 were not on Employer's payroll. (R.R. 40a)

Mr. Cardamone further testified that SWIF engaged the services of an outside auditing firm to determine whether the 808 category should be deleted from Employer's policy. (R.R. 42a) The results of those audits indicated that there was no payroll for category 808 employees from December 31, 1993 through December 31, 1994. (*Id.*) Mr. Cardamone stated that because the Bureau continued to card Employer for category 808 coverage, it had an

obligation to investigate whether it was an appropriate classification to be carried under the policy. (R.R. 43a) According to Mr. Cardamone, "various sources confirmed that, in fact, that particular operation in Pennsylvania had changed from previously and, you know, 808 did not seem to be an appropriate class for that policy in Pennsylvania." (R.R. 44a; Emphasis added.)

Contrary to SWIF's arguments, we believe that Mr. Cardamone's testimony demonstrated that SWIF relied on the representations of several independent sources to conclude that Employer had no category 808 employees, not just the representations made by Employer.

Moreover, SWIF failed to demonstrate that Employer knew its representations were false and that they were made in bad faith. Murray Lewine, Employer's president, testified that upon request of SWIF's counsel, Employer prepared a list of its employees and independent contractors for the years 1993 and 1994. This list was compiled from Employer's payroll records, which are computerized.

 Questions regarding Employer's payroll records focused on Claimant's status as an independent contractor as opposed to an employee. There was nothing to establish that Employer intentionally skewed its records to reflect that it had no category 808 employees or that the lack of such a category was made to induce SWIF to set a lower workers' compensation insurance premium. As previously noted, an insurer claiming that the policy is void *ab initio* bears the burden of proving that the insured knowingly made false statements on the application or knowingly failed to disclose information that was material to the risk against the insured sought to be protected. *Rohm and Haas Co. v. Continental Cas. Co.*, 732 A.2d 1236 (Pa.Super.1999), *aff'd* 566 Pa. 464, 781 A.2d 1172

(2001). In the present matter, SWIF made no attempt to establish that Employer made knowingly false statements.

SWIF further contends that it could not remove the classification 808 coverage from Employer's policy without approval by the Bureau. Section 654(c) of the Insurance Act, 40 P.S. § 814(c), provides that the assignment of a classification by an approved rating bureau may be appealed by an aggrieved party, corporate or otherwise, before the assigning bureau in accordance with the procedures of the bureau approved by the Insurance Commissioner. In other words, a party aggrieved by a classification assignment must challenge that assignment before the rating bureau. Further review is obtained by filing an appeal with the Insurance Commissioner. *Id.*

Pursuant to subsection (e) of Section 654, 40 P.S. § 814(e),

[n]either [SWIF], nor any insurance corporation, mutual association, or company, shall issue, renew, or carry any policy or contract of insurance against such liability under such acts, except in accordance with the classifications, underwriting rules, premium rates, and schedule or merit rating plans, proposed by the rating bureau or bureaus aforesaid for the risk insured and as modified, amended or approved by the Insurance Commissioner for such insurer.

Although there is some support for SWIF's position that it could not remove the category 808 employee coverage from Employer's insurance policy without Bureau approval, *see Ins. Dep't v. Colonial Gardens Nursing Home*, 22 Pa.Cmwlth. 119, 347 A.2d 770 (1975) (Bureau's change of nursing home's classification did not need approval of the Insurance Commissioner); *State Workmen's Ins. Fund v. Pitt Lumber Co.*, 9 Pa. D & C. 784 (1927)

(SWIF had no unilateral authority to change an employer's classification absent notice to the employer), we note that SWIF had authority from the Bureau to remove the category 808 employees from Employer's workers' compensation insurance policy, yet failed to do so. Thus, we are convinced that SWIF maintained Employer's category 808 employee coverage at its own discretion.

In summary, SWIF provided Employer with a workers' compensation insurance policy that maintained coverage for category 808 employees. SWIF, by issuing the policy, assumed a risk by assigning category 808 employees a nominal payroll of $1,000 and a nominal premium rate. That risk is inherent in the insurance industry.

Accordingly, we conclude that the Board and the WCJ did not err in determining that the workers' compensation insurance policy issued by SWIF to Employer was not void and that SWIF is the responsible carrier for payment of Claimant's workers' compensation benefits. Order affirmed.[5]

### *ORDER*

AND NOW, this 8th day of October, 2003, the March 12, 2003 order of the Workers' Compensation Appeal Board is AFFIRMED.

---

**5.** SWIF further argues that if the policy at issue was found to be void, it would not deprive Claimant of workers' compensation benefits because he would be entitled to benefits under the extra-territorial provisions of Delaware's Workers' Compensation Law, DEL. CODE ANN. tit. 19 §§ 2301–2397. Because we conclude that the insurance policy is not void, we need not address SWIF's argument.