508 A.2d 556

## In re ADOPTION OF B.A.B., a Minor Child.

### Appeal of C.W.W., JR., Mr. & Mrs. P., Adoptive Parents.

Superior Court of Pennsylvania.

Argued Jan. 29, 1986.

Filed April 24, 1986.

---

446

C. Walter Whitmoyer, Jr., Lebanon, for appellant.

Before CIRILLO, President Judge, and DEL SOLE and BECK, JJ.

CIRILLO, President Judge:

This is an appeal from an order dismissing the exceptions of Attorney A,[1] appellant herein. The sole issue presented is whether the hearing court abused its discretion in ordering the reduction of a fee charged by Attorney A for services rendered in connection with an uncontested private adoptive placement.

The facts disclosed by the record may be summarized as follows. Appellees, Mr. and Mrs. B, were interested in adopting a child. Appellees learned through relatives that the unborn child of Miss C might be available for a private adoptive placement. Appellees then contacted Attorney A and requested that he represent them in the potential adoption proceedings. Mr. and Mrs. B inquired as to the cost of Attorney A's services and were told that he would

1. Surnames will be referred to only by initial throughout this opinion in keeping with the confidentiality of the Adoption Act. The initials have been changed so as not to coincide with the actual initials.

accept the case at an hourly rate of $60.00. Billing was to be done on the basis of a time record kept by Attorney A. The parties agreed that Attorney A's fee would be based upon actual time and labor expended and not upon the success or failure of the adoption. The Bs requested that Attorney A conduct the adoption proceedings so as to preserve their anonymity.

Attorney A performed a variety of services during the twenty months between his initial consultation with Mr. and Mrs. B and the final hearing on the B's petition for adoption. Attorney A drafted and filed various legal documents relating to the adoptive proceeding, consulted with and advised his clients, attended hearings, and corresponded with other attorneys and the courts. Attorney A also met with Miss C and her family, made financial arrangements for the Bs to pay Miss C's medical expenses, obtained Miss C's and the natural father's consents, provided Miss C with a birth certificate and photographs of the child, obtained medical records, and was present at the hospital during the physical transfer of the child to the Bs. Attorney A was required to travel to a county at the other end of the state to testify as an intermediary at the final hearing.

Attorney A provided Mr. and Mrs. B with itemized bills on a periodic basis, which the Bs paid without objection. The total amount requested by Attorney A as compensation for his services was $3,160.00, not including $228.00 in transportation costs incurred as a result of traveling to the final hearing.

An examination of the record, including a transcript of testimony taken at the final hearing, reveals that neither the court nor Mr. and Mrs. B doubted that Attorney A had actually performed all of the services indicated on the bills and time sheets submitted to the hearing court.[2] Further, local counsel for Mr. and Mrs. B testified that Attorney A's services were satisfactory in all respects. The Bs do not argue differently on appeal and they do not challenge the existence or validity of their agreement with Attorney A.

2. The following is an excerpt from the final hearing testimony:

At the final hearing, the court, acting *sua sponte*, raised a question as to the amount of appellant's fee. Attorney A testified at length concerning the services rendered and made available detailed bills and time sheets for the court's inspection. The court ordered that Attorney A reduce his fee to $1200.00 and remit the balance to Mr. and Mrs. B, but allowed an additional $228.00 for travel expenses. In its opinion, the court, sitting en banc, based its decision in part upon its understanding that the receipt of compensation for services rendered as an intermediary constitutes "dealing in humanity," and thus a misdemeanor pursuant to 18 Pa.C.S. § 4305. The court further noted that, in its view, Attorney A's fees for legal services also constituted a violation of 18 Pa.C.S. § 4305 to the extent that they were "... beyond what is reasonable...." The court took notice of the fact that $600.00 was the maximum fee charged by attorneys in that county for services in connection with an adoption. Finally, the court indicated that, in its view, charging for nonlegal services rendered as an intermediary or overcharging for legal services in an adoption case is a violation of the Thirteenth Amendment to the United States Constitution, which prohibits the treatment of a person as a slave. Attorney A's exceptions to the order reducing his fee were dismissed. This appeal followed. Attorney A argues that the hearing court abused its discretion in reducing his fee. We agree.

■ In passing upon the court's reduction of Attorney A's fee, we are mindful that an abuse of discretion is more than just an error in judgment. A trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will. *Commonwealth v. Lane*, 492 Pa. 544, 424 A.2d 1325 (1981). Further,

ATTORNEY: Is it your position that I didn't do the services?
COURT: I'm not saying that you didn't, no, I'm not saying that. I know that you did all the work. What I'm saying is that we control the fees, and the attorneys know that when they come in to do adoption work that they can only charge a modest fee.

it is well settled that supervision of compensation is peculiarly within the discretion of the Orphans' Court. *In re Reed Estate*, 462 Pa. 336, 341 A.2d 108 (1975); *Wallis Estate*, 421 Pa. 104, 218 A.2d 732 (1966). Nevertheless, where the ultimate conclusion of law with respect to compensation is without record support, an appellate court cannot allow the decision to stand. *In re Reed Estate, supra; Crawford's Estate*, 307 Pa. 102, 160 A. 585 (1931).

The court is statutorily authorized to exercise discretionary authority with regard to the payment of fees in adoption cases. Section 2533 of the Adoption Act of October 15, 1980, P.L. 934, was amended in 1982 to include subsection (c), which provides:

(c) **Appropriate relief.**—The court may provide appropriate relief where it finds that the moneys or consideration reported or reportable pursuant to subsection (b)(8) are excessive.

Subsection (b)(8) requires that an itemized accounting of moneys and consideration paid to an intermediary or any other person by reason of the adoptive placement be included in the report of the intermediary mandated by § 2533. "Intermediary" is defined in the Adoption Act as:

Any person or persons or agency acting between the parent or parents and the proposed adoptive parent or parents in arranging an adoption placement.

23 Pa.C.S. § 2102.

In the instant case, the court relied primarily upon the following provision of the Pennsylvania Crimes Code in holding that Attorney A's receipt of compensation was partially unlawful and that the amount received was thereby subject to reduction:

**Dealing in infant children**

A person is guilty of a misdemeanor of the first degree if he deals in humanity, by trading, bartering, buying, selling, or dealing in infant children.

18 Pa.C.S. § 4305.

The obvious intent of § 4305 is to prohibit the evil of "baby selling" or trafficking in humanity. After careful

review of the record, we are unable to find factual support for the court's assertion that this evil is present or threatened in the case *sub judice.*

■ As stated above, Mr. and Mrs. B learned of the potential availability of the unborn child *through persons other than Attorney A.* Attorney A did not procure the child. The Bs then contacted Attorney A and requested that he provide them with legal representation in the potential proceedings. They insisted that he preserve their anonymity and also requested that he perform, on their behalf, the numerous nonlegal tasks connected with arranging the placement. The Bs agreed to pay Attorney A a fee based strictly upon the number of hours actually expended. Payment was not contingent upon the delivery of the child or the successful conclusion of the adoption proceedings. Thus, there was no danger that appellant's fee could be disguised as a payment for the baby. Under these circumstances, it cannot be said that Attorney A or any other person was directly or indirectly "dealing in humanity" with respect to this infant. We are not confronted with a situation wherein an attorney or another person solicits natural parents for their offspring or offers compensation for the release of a child to his custody or to the custody of a third person. Nor are we faced with the obvious evil inherent in a situation involving the procurement of a child with a view towards a future payment for placement, or the receipt of bids for an infant, or the maintenance of a list of adoptive parents willing to pay a flat fee for the delivery of a child. *See In re Adoption of Baby Boy L.,* 27 Pa.D. & C.3d 584 (1983).

The court concluded that at least some of the services performed by Attorney A were that of an intermediary as defined by § 2101 of the Adoption Act. However, even if true, this fact standing alone does not render those services noncompensable absent conduct in violation of the statutory prohibition against "dealing in humanity." Our Legislature

has made no provision regulating the licensure or qualifications of intermediaries.[3] Private persons or agencies are not statutorily prohibited from acting as intermediaries in adoptive placements and are not expressly prohibited from charging a fee for services rendered unless, of course, such services involve conduct amounting to "dealing in humanity" as proscribed by § 4305. The Legislature has provided that all fees paid to intermediaries are subject to complete and itemized disclosure, 23 P.S. § 2533(b)(8), and that the court shall order an investigation and report covering "... all pertinent information regarding the child's eligibility for adoption and the suitability of the placement...." 23 Pa. C.S. § 2535. We believe that these provisions contemplate the possibility of fees being paid to private intermediaries and provide a mechanism whereby violations of § 4305 may be discovered and then remedied pursuant to § 2533(c) or through possible criminal sanctions.

■ Under the facts of the instant case, appellant's conduct is not a violation of the statutory prohibition against dealing in humanity or the Thirteenth Amendment. Therefore, he may not be precluded as a matter of law from charging and collecting a previously agreed upon fee for services rendered as an intermediary and attorney in an adoption proceeding. We draw no distinction with regard to which of the services performed by appellant were that of an intermediary as defined and leave the task of defining or eliminating the role of the private intermediary to our Legislature.

■ Having determined that the hearing court's reliance upon § 4305 and the Thirteenth Amendment constituted a misapplication of the legal principles governing the exercise of its discretionary power, we next consider whether the order in question may be affirmed on the basis of the

**3.** For an overview of legislative regulation of intermediaries, see Annot., 3 A.L.R.4th 468 (1981).

court's overall conclusion that the fee was excessive. The law is clear that the decision of a trial court may be affirmed on appeal where the result is correct on any legal ground or theory. *Green v. Juneja,* 337 Pa.Super. 460, 487 A.2d 36 (1985). Thus, if the fee was unrelated to the services actually rendered, and therefore excessive, we may affirm the order of the hearing court.

The hearing court concluded that, in any event, Attorney A's total fee of $3,160.00 and his hourly fee of $60.00 were excessive in light of fees customarily charged for adoption cases by attorneys in that county. The court took notice of the fact that attorneys in that area rarely charged more than $600.00 and never more than $30.00 per hour for adoption cases and, according to the court, often charged nothing at all.

■ We hold that the hearing court abused the discretionary authority granted it by § 2533(c). We believe that § 2533(c) was intended to empower the court to provide "appropriate relief" when the fees reportable under § 2533(b)(8) are unrelated to actual services rendered and which therefore constitute payment for the child itself. As discussed above, the evil of "baby selling" as proscribed by § 4305 is not present in this case. Moreover, neither the court nor the adoptive parents dispute that Attorney A actually performed all of the services indicated in his detailed bills and time sheets or that he actually worked the number of hours claimed. Thus it is not contended that Attorney A's fee was unrelated to the services actually rendered. Under these circumstances, we are not inclined to disturb or otherwise invalidate an undisputed agreement fairly entered into and fully performed to the satisfaction of the parties.

The order of the hearing court dismissing appellant's exceptions is reversed.