# In re Adoption of C.W.S.

C.P. of Bucks County, no. 8487.

*Michael T. van der Veen*, for Kats.
*William E. Schaefer*, for adopting parents.

SOKOLOVE, *J.*, January 21, 1998—This case is before the court on issues arising out of my orders reducing adoption fees and costs as unreasonable and against the law.

The history of this otherwise unremarkable adoption is extensive. A hearing on the adoption was held on November 5, 1993, at the conclusion of which I ordered a further hearing requiring the attendance of Marina Kats, Esquire, who served as intermediary. My particular concerns were her identification of the adoptee and her explanation of fees and costs totaling $20,000.

A further hearing was held on November 10, 1993 at which Ms. Kats was present and testified. The notes of testimony of that date consist primarily of a colloquy between Ms. Kats and me during which we discussed the fees charged and the law applicable thereto. (N.T. 11/10/93, pp. 6-10.) I entered an order approving the adoption, but not approving the fees, taking that issue under advisement pending further hearing.

On November 12, 1993, I entered the following order:

"And now November 12, 1993, a rule is entered upon Dr. Marc A. Landsberg M.D., [birth mother], the firm of Rovner, Allen, Rovner, Zimmerman and Kats, and Marina Kats to show cause why payment made to them for

medical services, legal fees and the costs of housing, clothing and food, respectively, should not be disallowed as unreasonable and/or contrary to the provisions of the Adoption Law.

"Said rule is returnable at a hearing on December 13, 1993 at 10 a.m., conference room 3, fifth floor, Bucks County Courthouse, Doylestown, Pennsylvania. . . ."

The court's distribution page shows that copies of the order were sent to Marina Kats, Esquire, the law firm of Rovner, Allen, Rovner, Zimmerman and Kats (the law firm with which she was then associated), to Marc A. Landsberg M.D. at his office address, to R.A.S., the birth mother and to the adopting parents.

Pursuant to that order, a hearing on the fees and costs was held December 13, 1993. I received testimony from Dr. Landsberg, the adopting mother, the birth mother and Marina Kats.

The day after the hearing, I entered the following order:

"And now, December 14, 1993, after issuance of a rule to show cause entered on November 12, 1993 and hearing thereon held on December 13, 1993, we enter the following:

## "FINDINGS OF FACT

"(1) That the claimed reimbursement of medical and hospital costs paid by the adopting parents on behalf of the birth mother in the sum of $7,000 was excessive;

"(2) We allow as appropriate and reasonable the following charges;

"For delivery of the child, including initial office visit, pre-delivery testing (including ultrasound), and anesthesia, the sum of $2,000; for circumcision of the child, $150.

"(3) We therefore find that said payment charged to medical expenses exceeded fair and reasonable charges in the amount of $4,850.

"(4) The payment to the birth mother of the sum of $6,124.20, as 'reimbursement of costs for housing, clothing, food' is contrary to the provisions of the Adoption Act (23 Pa.C.S. §2533).

"(5) Under the circumstances, the attorney's fee in the sum of $2,500 is excessive, and we find that $1,000 should be allowed for the services rendered.

"We, therefore, find the payment made by the adopting parents to the intermediary exceed the amounts permitted by law in the sum of $12,474.20."

The court distribution sheet indicates that copies of that order were sent to Marina Kats, Esquire, at the Rovner law firm, to the attorney for the adopting parents, and to Dr. Landsberg at his office address. No exceptions, post-trial motions, or appeal were filed to that order.

Nothing occurred further until June 4, 1997, when the adopting parents, represented by new counsel, filed "petition for certification for rule to show cause why excess payments made to respondents for medical services, legal fees and costs of housing, clothing and food should not be returned to petitioners" (sic).

Pursuant to that petition, we entered an order dated June 10, 1997 awarding a citation directed to Marina Kats, the Rovner law firm (with which Ms. Kats is no longer associated) and Dr. Mark A. Landsberg, requiring them to show cause why they should not be required to refund the sum of $12,474.20 to the petitioners, together with interest, attorney's fees and costs.

The citation issued on June 10, 1997 set a return date of July 7, 1997. On that date, a response was filed on behalf of the Rovner firm. No response was filed by Marina Kats or Dr. Landsberg. Upon motion, including affidavits of service, a final order was entered against Kats and Landsberg on September 4, 1997 as a result of their failure to respond to the citation and rule to show cause.[1]

After the entry of the final order, a belated answer was filed on behalf of Ms. Kats, and on September 16, 1997, she filed a petition seeking to vacate the order of September 4, 1997.

Dr. Landsberg filed his untimely response on September 29, 1997.

On October 29, 1997, I heard discussion and argument on Kats' petition to vacate the order of September 4, 1997. Although an argument, not an evidentiary hearing, these proceedings were recorded in notes of testimony. I initially recited the pertinent procedural background set forth above. (N.T., 10/29/97, pp. 4-9.) At page 9 thereof, I stated the following, beginning at line 17:

"On September 16, 1997, the petition to vacate my order of September 4, 1997, . . ., is what is presently before me today. It is moot.

"All of this which happened after June 4, 1997, up to this time really doesn't matter. My judgment was entered on December 13, 1993. No post-trial motions were filed. No appeal was taken. And the order entered on that date became a final order.

---

1. According to a supplemental affidavit of service dated September 2, 1997, service on Dr. Landsberg was originally made on counsel representing him. Upon notice of withdrawal of counsel, further notice was sent directly to Dr. Landsberg on July 3, 1997.

"And as far as I'm concerned the money is due since December 13, 1993.

"I am therefore entering the following order: That within 30 days from this date, Doctor Marc A. Landsberg, shall pay the sum of $4,850, with interest at 6 percent per annum from December 13, 1993. And Marina Kats and the law firm of Rovner, Allen, Rovner and Zimmerman are jointly and severally liable and ordered to pay the sum of $12,474.20, within 20 days of this date with interest from December 14, 1993.

"That latter amount to be reduced by the portion thereof paid by Doctor Landsberg, but if he fails to do so, they are responsible for the full amount. . . ."

It is still my position that the issues of overcharge were determined by my order of December 14, 1993. However, since no post-trial proceedings followed, I submit the following legal justification for that order. At the end of the hearing of November 10, 1993. I supplied Ms. Kats with a copy of our opinion issued but a few months earlier in *In re Adoption of A.R.D.,* Bucks Co. Court of Common Pleas, Orphans' Court Division, no. 5042 (1993). I hoped this would enable her to understand the impropriety of the amounts charged. I here abstract portions of that opinion to explain the legal basis for my conclusions in the instant case.

In that earlier case, involving similar issues, the opinion states the following:

"At the time of the adoption hearing, we notified the parties that some of the charges to the adopting parents did not comply with the restrictions imposed by the Pennsylvania Supreme Court in *In re Baby Girl D.,* 512 Pa. 449, 517 A.2d 925 (1986). . . .

"Since the decision was based upon the Adoption Act of 1980 and traditional, common law precepts of adoption, it is appropriate to apply its general holdings to this adoption.

"The *Baby Girl D.* court noted that allowable expenses to adopting parents had been limited to reasonable unreimbursed lying-in expenses, reasonable legal fees incident to the adoption proceedings and the costs of the proceedings. The court explained that limitations on fees were necessary to ensure that children be placed in homes which would promote their needs and welfare as opposed to those which were simply the wealthiest. Also, the limitations guaranteed that children would not be bought and sold like commodities, which violated the public policy of the Commonwealth. Thus, the court held that payments to or for natural parents by adopting parents are permissible when the payments are for services which directly benefit the child, such as medical expenses directly related to the birth. Payments which do not directly benefit the child are impermissible. Using these guidelines the court disallowed numerous expenses sought to be charged against adopting parents, such as the natural mother's counseling and housing expenses and medical expenses unrelated to the birth, including Lamaze classes, prenatal care and sonograms.

"The General Assembly tempered the *Baby Girl D.* decision in modifying the requirements for an intermediary's report as follows:

"*Permissible reimbursement of expenses.*—Payments made by the adoptive parents to an intermediary or a third party for reimbursement of the following expenses, calculated without regard to the income of the adoptive parents, are permissible and are not in violation of 18 Pa.C.S. §4305 (relating to dealing in infant children):

"(1) and those medical and hospital expenses incurred by the natural mother and child incident to birth.

"(2) Medical, hospital and foster care expenses incurred on behalf of the child prior to the decree of adoption. . . ." 23 Pa.C.S. §2533(d).

"This amendment expressly applies to expenses incurred for adoption decrees entered after its effective date, January 15, 1988.

"The final overlay to our decision was announced by the Supreme Court in *In re Adoption of B.A.B.,* 517 Pa. 84, 534 A.2d 1050 (1987). There, the court prohibited any fee, exclusive of reasonable expenses, for intermediary services rendered by an attorney. The court's holding was premised upon an analysis of the Adoption Act of 1980 and the implication of *Baby Girl D.* that an intermediary may not profit from the placement of an adoptee. The court refused to enforce an agreement by the adoptive parents to pay the intermediary because it was against public policy."

These same principles are clearly applicable to the instant case. The birth mother was compensated for precluded expenses, the doctor charged the adopting parents for procedures admittedly not related to the birth, and the attorney charged for intermediary services specifically precluded in the *B.A.B.* case.

Finally, Dr. Landsberg misconstrues the basis on which I found his fee excessive. He suggests that it was reasonable and that, in effect, any adopting parents would pay that sum. My conclusion was based on the finding that it was well in excess of *his own* regular charges for prenatal visits and delivery of a baby at that time. An adoptive baby is not a commodity whose value is based on "what anyone would pay."