**In re ADOPTION OF M.M.H.**

**Appeal of James E. Mahood and Wilder & Mahood, P.C., Appellants.**

Superior Court of Pennsylvania.

Argued July 21, 2009.
Filed Sept. 4, 2009.

James E. Mahood, Pittsburgh, for appellants.

BEFORE: KLEIN, ALLEN, and COLVILLE,* JJ.

OPINION BY ALLEN, J.:

¶ 1 This is an adoption case that concerns the orphans' court's authority to determine, *sua sponte*, the reasonable value of an attorney's legal services and to reduce the legal fees it finds excessive. In this case, the trial court, sitting *en banc*, concluded that the legal fees of James E. Mahood and Wilder and Mahood, P.C., ("Appellants") were excessive when compared to similar cases in Allegheny County, and reduced them to an amount that it found to be reasonable. On appeal, Appellants maintain, in essence, that the trial court committed an error of law because it lacked the authority to take such measures. We conclude that based upon the facts of this case, the trial court did not possess the authority—statutory, policy-based, inherent or otherwise—to unilaterally decrease Appellants' attorney's fees. Accordingly, we reverse the trial court's order and remand for proceedings consistent with this Opinion.

¶ 2 As this case presents a pure question of law, a detailed recitation of the factual and procedural history is unnecessary. The following account suffices for our disposition.

¶ 3 M.M.H. was born on August 5, 1998, and her natural mother died on October 21, 2006. Since June 2004, M.M.H. resided with her maternal grandmother ("Grandmother"). On January 14, 2008, Appellants entered into a contract with Grandmother and agreed to represent her in legal proceedings against M.M.H.'s natural father ("Father"), as she sought custody and adoption of M.M.H. R.R. at 36a–39a. In the contract, Appellants informed Grandmother that she would be charged (on average) $350.00 per hour for legal services and notified her that "these rates may be substantially higher than those charged by attorneys who do not limit their practices to family law." R.R. at 36a.

¶ 4 On February 11, 2008, Appellants filed a Petition for Involuntary Termination of Parental Rights and a Petition for Adoption. Father initially contested these petitions and filed his own Complaint for Custody. Appellants prepared the case in anticipation that it would proceed to multiple hearings and/or trials. The case proceeded on a dual track in both the Family and Orphans' Court divisions. Then, without providing any prior notice, Father failed to appear at an evidentiary hearing on Grandmother's Petition for Involuntary Termination of Parental Rights. At this point, Appellants learned for the first time that Father would not oppose the adoption. Ultimately, Father did not contest the remaining proceedings and they concluded in Grandmother's favor.

¶ 5 On May 8, 2008, Appellants filed a Report of Costs, Fees and Expenses in accordance with Pa.O.C.R. 15.5(d), itemizing and listing the total amount of their legal fees as $11,513.32. The trial court, on May 21, 2008, entered an order directing Appellants to appear before the court, *en banc*, "to present factual information and argument as to why the attorney's fees charged ... should not be reduced." Order, 5/21/08, at 1 (unnumbered).[1] At the hearing, Appellants basically argued that Mr. Mahood was a seasoned attorney who had over thirty years of experience in the practice of family law. Appellants also stressed that Grandmother agreed to pay them $350 per hour and that she did not

---

* Retired Senior Judge assigned to Superior Court

1. Appellants do not contest the trial judge's decision that this issue be heard and adjudicated by the court sitting *en banc*.

take issue with either the rate or total amount of legal fees charged. In addition, Appellants argued that the certified report of legal fees was supported by an itemized list that fully documented and explained the nature and extent of their legal services. Finally, Appellants opined that orphans' court did not possess the authority to review and reduce, *sua sponte*, their legal fees under the Adoption Act.

¶ 6 Following the hearing, on July 21, 2008, the trial court, sitting *en banc*, ordered Appellants to reduce their legal fees by approximately fifty percent—from $11,513.32 to $6,000.00.[2] In its opinion, the trial court placed significant weight on the fact that during the last six and one-half years, there were forty-six cases of uncontested adoptions by a grandparent in Allegheny County and that the average legal fee in such a case was $1,325. Trial Court Opinion (T.C.O.), 7/21/08, at 1. Emphasizing its role as the "protector of the adoption process," the trial court concluded that it had the authority to reduce legal fees in adoption cases. *Id.* According to the trial court, this authority had its genesis in 23 Pa.C.S.A. § 2724(a) and Pa.O.C.R. 15.5(d). The trial court reasoned that since these provisions require an attorney to disclose his/her legal fees to the court, it would be illogical to read them as only granting the court the authority "to check the arithmetic of a legal bill." *Id.* at 6. The better view, the trial court proposed, was to read 23 Pa.C.S.A. § 2724(a) and Pa.O.C.R. 15.5(d) as providing it with "the inherent authority to modify those fees." *Id.*

¶ 7 Additionally, the trial court found that its authority to regulate legal fees in adoption cases derived from two considerations of public policy. First, "the adoption process should not be placed beyond the reach of people with limited means who can still provide a positive environment for the adoptive child." *Id.* at 2 (citing *In re Baby Girl D.*, 512 Pa. 449, 517 A.2d 925, 927 (1986)). Second, "excessive fees would permit the attorney to profit impermissibly from the placement and adoption" of children. *Id.* (citing *In re Baby Girl D.*, 517 A.2d at 926)). The trial court noted that although this issue was unique to Pennsylvania's appellate courts, the intermediate appellate courts of New York have held that its courts have the authority to scrutinize and determine the reasonableness of legal fees in adoption proceedings. *Id.* at 7–8. The trial court referenced a Pennsylvania orphans' court case, *In re Adoption of C.W.S.*, 42 Pa. D. & C.4th 68 (Bucks Cty.1998), as support for its decision. *Id.* at 6.

¶ 8 The trial court found further support for its authority to reduce legal fees by referencing other matters falling within the orphans' court's jurisdiction. Drawing an analogy to the law governing decedent's estates and settlement of a minor's civil law claim, the trial court concluded that it was vested with the equitable or inherent authority to modify attorney's fees in adoption cases. *Id.* at 2–3, 5–7. The trial court also cited the Pennsylvania Rules of Professional Responsibility, particularly Pa.R.P.C. 1.5, as another source of its authority to reduce legal fees because that Rule prohibits an attorney from charging an "excessive fee." *Id.* at 3–5. For these reasons, the trial court ultimately concluded that it had the authority to review an attorney's legal fees and to alter those fees, *sua sponte*, if they were excessive.

¶ 9 In analyzing the total amount of Appellants' legal fees, the trial court pro-

---

**2.** Hereinafter, our reference to "the trial court" or "the court" is to the orphans' court sitting *en banc*, per Lucchino, Mazur, and O'Toole, JJ.

vided the following rationale to explain why reduction was proper:

> We find there is no question that [Attorney James E. Mahood] performed legal services resulting in a successful outcome for his client. We also find that his fee of $11,513.32, almost nine times the average fee customarily charged in Allegheny County for similar legal services, is excessive and unreasonable for the adoption in this case. The only remaining issue is determining the reasonable value of [Attorney Mahood's] fee.

T.C.O., 7/21/08, at 8.

¶ 10 To calculate the reasonable value of Appellants' legal fees, the trial court first noted that the average fee for similar services in Allegheny County was $1,325.00. *Id.* The trial court then noted that Mr. Mahood was "a seasoned practitioner" and considered Appellants' "actual legal work" and "the novelty and difficulty of the issues involved." *Id.* The trial court further considered Appellants' time and effort in preparing the case in anticipation that it would be contested, and Appellants' expectation that their legal fees would be paid as billed. *Id.* at 8–9. Based on these factors, the trial court, without further elaboration, found that $6,000.00 was an "appropriate" legal fee. *Id.* at 9.

¶ 11 Following its decision, the trial court ordered Appellants to file a new certification documenting the adjusted amount of their legal fees within thirty days. Appellants complied with the trial court's request and then, on August 13, 2008, filed a timely notice of appeal to this Court. On August 14, 2008, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement on or before September 8, 2008. Appellants filed their statement on September 8, 2008. The trial court, in turn, issued a supplemental Pa.R.A.P. 1925(a) opinion, reaffirming the rationale employed in its July 21, 2008 opinion.

¶ 12 On appeal to this Court, Appellants raise the following issues for review:

I. Whether the orphans' court erred in *sua sponte* reducing fees to which client and attorney agreed and that were reasonably expended given the facts of this case[?]

II. Whether the orphans' court erred in misinterpreting its authority under the Adoption Act[?]

III. Whether the orphans' court erred in exceeding and/or abusing its jurisdiction, and in acting in a manner that is [an] affront to the jurisdiction of the Supreme Court of Pennsylvania in its exclusive regulation of the Bar[?]

Brief for Appellant at 4.

¶ 13 For ease of disposition, we address Appellants' three issues on appeal together.

¶ 14 Appellants first contend that Grandmother freely entered into a contract with them, agreeing to pay their specified hourly rate of $350. Appellants maintain that their legal fees were itemized in the certification and that all of the legal work they completed was necessary for successful resolution of the case. Appellants also fault the trial court for using the standard average fee for an uncontested adoption to evaluate their legal fees, arguing that Grandmother's case was indeed contested by Father until "the eleventh hour."

¶ 15 Appellants next draw a distinction between an attorney and an intermediary under the Adoption Act. Appellants emphasize that orphans' court has the authority under 23 Pa.C.S.A. § 2533 to reduce an intermediary's compensation, but contend that there is no similar provision in the Adoption Act that vests the orphans' court with the authority to reduce an attorney's legal fees. In the absence of express stat-

utory authority, Appellants submit that the trial court could not reduce, *sua sponte,* their legal fees to an amount that it found to be reasonable. Further, Appellants counter that the trial court's decision did not advance the public policy of *In re Baby Girl D., supra.* In particular, Appellants claim that they did not facilitate the sale of a child, nor did they impermissibly profit from the adoption proceedings.

¶ 16 Appellants assert that the trial court relied on inapposite case law in the areas of decedent's estate and settlement of a minor's civil lawsuit to support its position. In those cases, Appellants argue, the orphans' court's authority to reduce an attorney's legal fees either derived directly from statute or was a default rule applied in the event that there was no contract between the parties concerning the payment of legal fees. Finally, Appellants posit that the trial court, in applying and enforcing Pa.R.P.C. 1.5, encroached upon the Supreme Court's exclusive authority to regulate the practice of law. From these premises, Appellants conclude that the trial court committed an error of law when it found that their legal fees were excessive, and reduced them to an amount that it found to be reasonable. We agree.

¶ 17 This case presents a pure question of law regarding the authority of the orphans' court in an adoption proceeding to disallow a portion of an attorney's legal fees based upon a finding that those fees are unreasonable or excessive. *See In re Baby Girl D.,* 517 A.2d at 927. As with all questions of law, our standard of review is *de novo* and our scope of review is plenary. *Gladstone Partners, LP v. Overland Enter.,* 950 A.2d 1011, 1014 (Pa.Super.2008).

¶ 18 To determine whether an orphans' court has the authority to reduce an attorney's legal fees, we first analyze Pa.O.C.R. 15.5 and the provisions of the Adoption Act pertaining to the fees and costs that adopting parent(s) pay an intermediary and attorney.

In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. When analyzing particular words and/or phrases, we construe them according to the rules of grammar and consider the context in which they are used. This Court does not have the authority to insert a word or additional requirement into a statutory provision where the legislature has failed to supply it. Since there is a presumption that the General Assembly intended a statute to be effective, we must not read a section of a statute in isolation, but rather, should view it with reference to, and in light of, other sections of the statute.

*In re Jacobs,* 936 A.2d 1156, 1163 (Pa.Super.2007) (citations and internal quotation marks omitted).

¶ 19 In pertinent part, Pa.O.C.R. 15.5 states:

**Rule 15.5. Adoption**

\*     \*     \*     \*     \*     \*

(d) Disclosure of Fees and Costs. At the hearing [on the petition for adoption] there shall be offered in evidence a report, certified by counsel for the petitioner, setting forth the amount of fees and expenses paid or to be paid to **counsel,** and any other fees, costs and expenses paid or to be paid to an **intermediary** or any other person or institution, in connection with the adoption.

\*     \*     \*     \*     \*     \*

Pa.O.C.R. 15.5(d) (emphasis added).

¶ 20 "Intermediary" is defined in the Adoption Act as: "Any person or persons

or agency acting between the parent or parents and the proposed adoptive parent or parents in arranging an adoption placement." 23 Pa.C.S.A. § 2102.

¶ 21 Similarly, under 23 Pa.C.S.A. § 2724(a), the trial court is obligated to require disclosure of all consideration paid in connection with the adoption:

> § 2724. **Testimony and investigation**
>
> (a) TESTIMONY.—The court shall hear testimony in support of the petition and such additional testimony as it deems necessary to inform it as to the desirability of the proposed adoption. It shall require a disclosure of all moneys and consideration paid or to be paid to **any person or institution** in connection with the adoption.

23 Pa.C.S.A. § 2724(a) (emphasis added).

¶ 22 Pursuant to 23 Pa.C.S.A. § 2533, an intermediary must account for its services, and the orphans' court is vested with the ability to reduce any payment that it finds excessive. In relevant part, this provision states:

> § 2533. **Report of intermediary**
>
> (a) GENERAL RULE.—Within six months after filing the report of intention to adopt, the **intermediary** who or which arranged the adoption placement of any child under the age of 18 years shall make a written report under oath to the court in which the petition for adoption will be filed and shall thereupon forthwith notify in writing the adopting parent or parents of the fact that the report has been filed and the date thereof.
>
> (b) CONTENTS.—The report shall set forth:
>
> * * * * * *
>
> (8) **An itemized accounting of moneys and consideration paid or to be paid to or received by the intermediary** or to or by any other person or persons to the knowledge of the intermediary by reason of the adoption placement.
>
> * * * * * *
>
> (c) APPROPRIATE RELIEF.—**The court may provide appropriate relief where it finds that the moneys or consideration reported or reportable pursuant to subsection (b)(8) are excessive.**

23 Pa.C.S.A. § 2533(a), (b)(8), (c).

¶ 23 To aid in our interpretation of these statutes and rules, we find that our Supreme Court's decision in *In re Adoption of B.A.B,* 517 Pa. 84, 534 A.2d 1050, 1051 (Pa.1987), is instructive. In that case, prospective adoptive parents contracted with an attorney who charged $60 per hour for his services. The attorney, however, not only engaged in legal services, but also performed intermediary-type services. These intermediary-type services included, for example, "meeting with the natural mother and her parents, arranging for payment of 'lying in' expenses by the adoptive parents, arranging for prenatal medical tests of the infant, receiving clothing for the infant from the adoptive parents, and physically transferring the infant at the hospital to the adoptive parents." *Id.*

¶ 24 The Court interpreted the 1980 and 1982 legislative amendments to 23 Pa. C.S.A. § 2533 and concluded that an intermediary could only receive compensation from the adopting parents for certain out-of-pocket "expenses." *Id.* at 1052; *see* 23 Pa.C.S.A. § 2533(d) (listing permissible intermediary expenses that can be reimbursed by the adoptive parents without regard to the adoptive parents' level of income). To the extent that the attorney performed the work of an intermediary, the Court cited Pennsylvania's public policy that "an intermediary should not profit from the placement of an adoptee," and found that the contract, at its $60 per hour

flat rate, was unenforceable because the attorney would impermissibly "profit" from the adoption. *Id.* (citing *In re Baby Girl D.*). Ultimately, the high Court upheld the orphans' court's conclusion, which it rendered *sua sponte,* to "disallow any fee (exclusive of reasonable expenses) for [the attorney's] intermediary services" under 23 Pa.C.S.A. § 2533(c). *Id.* Notably, the Court approved the orphans' court's decision to sustain the portion of the attorney's bill that was for "legal services" and "actual legal work performed." *Id.*

¶ 25 Our examination of the above leads us to conclude that under the Adoption Act, there is a significant distinction between the "fees and expenses" paid to counsel in performing legal services and the "money and consideration" paid to an intermediary in performing intermediary-type services. Although an attorney is required to disclose the legal fees he/she charges in connection with an adoption under Pa.O.C.R. 15.5(d) and, ostensibly, 23 Pa.C.S.A. § 2724(a), neither the Adoption Act nor the Orphans' Court Rules contain an express provision that grants the orphans' court the authority to reduce legal fees. By way of contrast, an intermediary is required under 23 Pa.C.S.A. § 2533 to submit to the court "[a]n itemized accounting of moneys and consideration paid" to the intermediary. *Id.* Unlike the laws applicable to an attorney and legal fees, 23 Pa.C.S.A. § 2533(c) specifically vests the orphans' court with the authority to strike "money or consideration" paid to an intermediary for intermediary-type services on the ground that it is "excessive."

¶ 26 Pursuant to the disclosure requirements of Pa.O.C.R. 15.5(d), an attorney must certify the fees and expenses that were paid (or are to be paid) to both counsel and any intermediary. On November 24, 1975, our Supreme Court adopted Pa.O.C.R. 15.5, and the Rule became effective on January 1, 1976. When our legislature amended 23 Pa.C.S.A. § 2533 in 1982 to include subsection (c), thus providing the trial court with the express authority to reduce "excessive" intermediary "compensation," *see In re Adoption of B.A.B,* 534 A.2d at 1052, the Adoption Act did not contain a similar statutory provision for reducing an attorney's legal fees. At this time, the legislature could have amended the Adoption Act to give the orphans' court the express authority to modify an attorney's legal fees, but it did not do so. In light of our legislature's silence on the subject, we decline to extend the clear language of 23 Pa.C.S.A. § 2724(a) and Pa.O.C.R. 15.5(d) beyond their plain meaning to conclude that the trial court had the authority, express or implicit, to reduce an attorney's legal fees. In our view, this would expand upon both the statute and rule. That is not this Court's function, and is a matter that is reserved for our legislature.

¶ 27 We conclude, therefore, that the plain language of the Adoption Act's provisions and Pa.O.C.R. 15.5(d) cannot reasonably be interpreted as granting the trial court the authority to reduce, *sua sponte,* an attorney's legal fees because they are "unreasonable" or "excessive." Rather, these laws only require that the attorney *disclose* or report the amount of legal fees to the court; mere disclosure, however, does not give the trial court the authority to review and assess legal fees on a substantive basis. Under *In re Adoption of B.A.B,* the trial court can conduct a limited review of the attorney's certification of legal fees to determine whether they include impermissible intermediary fees. A trial court could also review the certification of legal fees to determine whether the attorney provided sufficient supporting documentation or itemization and whether the work claimed to be done is supported by court records and/or filings. However,

the trial court does not possess the necessary statutory authority to implement its own guidelines and evaluate the underlying amount of the attorney's legal fees, or hourly rate, to decide whether they are "reasonable."

¶ 28 The trial court also justified its decision by relying upon the public policy espoused in *In re Baby Girl D.* The trial court concluded that these public policy considerations were applicable and rendered Appellants' contract with Grandmother unenforceable as a matter of law. We cannot agree.

¶ 29 In *In re Baby Girl D.*, the Supreme Court addressed the propriety of certain fees charged to adopting parents by the intermediary agency, Family Infertility and Counseling Center. *Id.* at 926. Prefacing its discussion, the Court stated two broad public policy concerns:

> Traditionally, allowable expenses to adoptor parents have been limited to reasonable unreimbursed lying-in expenses, reasonable legal fees incident to the adoption proceedings and costs of the proceeding. The reasons for the limitations on fees are obvious. Firstly, the limitations ensure that children will be placed in homes that promote their needs and welfare, 23 Pa.C.S.A. § 2902. Although financial considerations are certainly a factor, placement of children in adoptive homes should not rest *solely* on the wealth of the adoptors. Many homes with scarce financial resources are nevertheless adequate to provide the love, protection and support that children require. Secondly, the limitation upon expenses ensures that children are not bought and sold like commodities. As noted supra, sales of children contravene the public policy of this Commonwealth, and cannot be sanctioned by our courts. [*See* 18 Pa.C.S.A. § 4305 (Dealing in infant children) [3]]. Thus, payments to or for natural parents by adoptor parents are permissible when the payments are for services which directly benefit the child, such as medical expenses directly related to the birth. *See, Gorden v. Cutler,* 324 Pa.Super. 35, 471 A.2d 449 (1983). Such expenses are paid to ensure a safe birth and healthy infant, and not for the benefit of the mother, although the mother certainly receives an indirect benefit. Payments by adoptor parents which do not directly benefit the child are impermissible.

*Id.* at 927–28 (footnote omitted).

¶ 30 Applying the rule that payments made by the adopting parent(s) must directly benefit the child, the Court proceeded to explore each of the disputed fees that the intermediary agency charged-namely for counseling services and the room, board and travel expenses of the natural mothers; counseling services for adopting parents; advertising expenses; medical expenses unrelated to the birth of the child; and a sliding scale agency fee arrangement. *Id.* at 928–930. In reviewing the intermediary agency's fee arrangement, the Court found that the fee was illegal and in violation of public policy. *Id.* at 930. Specifically, the Court noted that the fee arrangement was based on a sliding scale that calculated the agency's fee at seven and one-half percent of the adopting couple's gross annual income, with a maximum fee of $7,500.00 *Id.* Finding that the sliding scale arrangement would motivate the intermediary agency to place children with adopting parents who could afford to pay the highest amount, the Court con-

---

**3.** A person commits the crime of dealing in infant children, a misdemeanor of the first degree, "if he deals in humanity, by trading, bartering, buying, selling, or dealing in infant children." 18 Pa.C.S.A. § 4305.

cluded that "[t]he charging of a fee based upon the income of the adoptor parents is per se illegal." *Id.* Because the sliding scale arrangement allowed the intermediary agency to obtain a "profit," the Court found that the agency was "dealing in humanity in contravention of the criminal statute." *Id.* The Court reiterated that the intermediary agency's fee arrangement was unrelated to the direct benefit of the child, because it was fueled by economic incentive and did not ensure that the child would be placed with the family who could provide the most loving home. *Id.*

¶ 31 Unlike the trial court, we do not interpret *In re Baby Girl D.* as supporting the proposition that an orphan's court has the authority to reduce legal fees if it determines that they are excessive. The sole issue in *In re Baby Girl D.* concerned an agency's *intermediary fees,* and the Court did not reduce, much less discuss in any meaningful fashion, an attorney's *legal fees.* As explained above, 23 Pa.C.S.A. § 2533(c) vests the orphans' court with the authority to strike excessive intermediary-type services and this provision was in effect at the time our Supreme Court decided *In re Baby Girl D.* Consequently, *In re Baby Girl D.* expands upon the standard to determine whether intermediary-type services are excessive under the statute—*i.e.* if they directly benefit the child. We conclude, therefore, that the holding in *In re Baby Girl D.* is circumscribed by the specific factual circumstances of that case and is applicable only to intermediary-type services and fees.

¶ 32 Since *In re Baby Girl D.'s* holding is confined to intermediary-type services, the high Court's statement that "[t]raditionally, allowable expenses to adoptor parents have been limited to … reasonable legal fees," is at best a non-binding declaration of *dicta.* The Court in *In re Baby Girl D.* did not cite any authority to

account for this premise, and we have not located a Pennsylvania appellate court decision that acknowledges and applies this precept of law to discount an attorney's legal fees. Even if the statement in *In re Baby Girl D.* is not *dicta,* the comment does not set forth any standard to determine what precisely constitutes a "reasonable" fee. On grounds discussed more fully below, we conclude that where, as here, the attorney's legal fees are supported by itemized documentation, and the trial court conceded that the work performed was for actual legal services, then legal fees are *per se* reasonable for purposes of the Adoption Act. As such, the *dicta* in *In re Baby Girl D.,* is insufficient to confer upon the trial court the authority to evaluate the reasonableness of Appellants' legal fees.

¶ 33 We also find that the trial court erred in applying and extending the two public policy rationales in *In re Baby Girl D.* to the case at bar.

¶ 34 First, the trial court's public policy concern that Appellants' legal fees somehow deprived those who are economically disadvantaged from participating in the adoption process was misplaced. There was no evidence to suggest that Appellants monopolized the field of adoption law in Allegheny County. To the contrary, the trial court's Pa.R.A.P.1925(a) opinion recognized that there are other lawyers in Allegheny County who charge a lower hourly rate. Clearly, Appellants' representation of Grandmother did not have the effect of precluding those who are economically disadvantaged from participating in the adoption of M.M.H. In fact, Grandmother was the only person seeking to adopt M.M.H. Under these circumstances, there was no causal relationship between Appellants' legal fees, Grandmother's wealth and Grandmother adoption of M.M.H. Accordingly, we conclude that the

first public policy rationale in *In re Baby Girl D.* was inapplicable and did not void Appellants' contract with Grandmother.

■ ¶ 35 Second, the trial court incorrectly cited the public policy that a person should not "profit" from the placement of a child as a source of its authority to reduce Appellants' legal fees. In a factually similar case, this Court addressed the issue of whether an attorney's legal fees constituted an unlawful profit in contravention of public policy. As we pronounced:

> ... Mr. and Mrs. B learned of the potential availability of the unborn child *through persons other than Attorney A.* Attorney A did not procure the child. The Bs then contacted Attorney A and requested that he provide them with legal representation in the potential proceedings.... The Bs agreed to pay Attorney A a fee based strictly upon the number of hours actually expended. Payment was not contingent upon the delivery of the child or the successful conclusion of the adoption proceedings. Thus, there was no danger that appellant's fee could be disguised as a payment for the baby. Under these circumstances, it cannot be said that Attorney A or any other person was directly or indirectly "dealing in humanity" with respect to this infant. We are not confronted with a situation wherein an attorney or another person solicits natural parents for their offspring or offers compensation for the release of a child to his custody or to the custody of a third person. Nor are we faced with the obvious evil inherent in a situation involving the procurement of a child with a view towards a future payment for placement, or the receipt of bids for an infant, or the maintenance of a list of adoptive parents willing to pay a flat fee for the delivery of a child.

*In re Adoption of B.A.B.*, 352 Pa.Super. 444, 508 A.2d 556, 559–60 (1986) (*B.A.B.I* ),

*rev'd on other grounds by* 517 Pa. 84, 534 A.2d 1050 (1987).

¶ 36 Although *B.A.B. I* was reversed by our Supreme Court on the ground that the attorney included impermissible intermediary-type services in his legal bill, we find that the discussion in *B.A.B. I* pertaining to legal fees remains viable law and is instructive in disposing of the issue at hand. Consequently, we reaffirm *B.A.B. I* to the limited extent that it elaborated on the relationship between legal fees and an unlawful profit for purposes of public policy.

¶ 37 Applying the reasoning of *B.A.B. I* to the facts presently before us, we conclude that Appellants were not "dealing in humanity." Here, there is no evidence that Appellants "procured" M.M.H., engaged in "baby-brokering" or facilitated the sale of a child. Unlike the adoption agency intermediary in *In re Baby Girl D.,* Appellants did not calculate their fees according to Grandmother's yearly income, nor did they condition payment of a preset sum of money upon successful completion of the case. In contrast to the scenario in *In re Adoption of B.A.B.,* the trial court did not find that Appellants disguised impermissible intermediary services in their legal fees. Rather, Appellants charged an hourly rate of $350, which Grandmother agreed to, and their certification itemized precisely how Appellants arrived at total legal fees of $11,513.32. In short, Appellants were not involved in the placement process, directly or indirectly, and Appellants documented their legal services with particularity. We conclude, therefore, that the legal services Appellants performed, and their surrounding circumstances, did not evince a situation where Appellants violated public policy by dealing in humanity.

■ ¶ 38 The trial court, however, found that Appellants' total amount of legal fees,

measured against the "value" of their services, were patently excessive when compared with the average legal fees charged in Allegheny County for similar adoptions. On this basis, the trial court concluded that Appellants "profited" from the placement of a child, contravening public policy.

¶ 39 We disagree. The practice of law, as in most if not all businesses, is founded upon and spurred by the forces of market competition. In this case, Grandmother entered into a contract to pay Appellants $350 per hour and voiced no objection to the total amount of Appellants' legal fees or their hourly rate. In fact, Grandmother had paid a significant portion of Appellants' legal fees, approximately forty-five percent, at the time of the *en banc* hearing. Regardless of her income, Grandmother, as a consumer, was free to retain Appellants—or any other lawyer. In the fee agreement, Appellants cautioned Grandmother that their rate may be "substantially higher" than lawyers whose practice is not limited to family law, but Grandmother nonetheless chose to retain Appellants.

¶ 40 On this record, we are unable to conclude that Appellants obtained a "profit" in violation of public policy. Surely, an attorney, unlike an intermediary, is entitled to compensation for his/her services. The fact that an attorney's legal fees do not comport with the standard for a geographic location is an inadequate (and indefinite) basis to find that an attorney improperly profited from an adoption proceeding. Indeed, were we to sanction the trial court's methodology, this Court, in effect, would encourage a form of price fixing, whereby the orphans' court applies the standard base rate for a typical adoption case in the respective county, and then makes adjustments in light of subjective variables such as the attorney's "experience," "skill" and the "level of difficulty" of the issues involved. This we decline to do. Enforcing a standard rate eviscerates the overall time expended and the hourly rate of a lawyer, and erroneously presumes that all legal fees above the standard rate constitute an impermissible profit, while all legal fees that fall below the standard rate are inadequate compensation. Appellants clearly have the freedom to contract, and the reasonable expectation to be paid a certain sum of money for services rendered. We therefore conclude that Appellants cannot be viewed as improperly "profiting" from the adoption of M.M.H. and the second public policy concern of *In re Baby Girl D.* cannot be expanded to the present case.

¶ 41 Moreover, the trial court further erred when it relied upon the Pennsylvania Rules of Professional Conduct as a source for its authority to assess Appellants' legal fees.

¶ 42 Pursuant to the constitutional authority vested to it under by Article V, Section 10(c) of the Pennsylvania Constitution, the Supreme Court has declared that it has the exclusive authority to regulate and supervise the conduct of attorneys who are its officers. *Beyers v. Richmond,* 594 Pa. 654, 937 A.2d 1082, 1089–90 (2007). In exercising this constitutional authority, the Supreme Court "adopted the Rules of Professional Conduct and the Rules of Disciplinary Enforcement, which govern the conduct and discipline of attorneys." *Commonwealth v. Stern,* 549 Pa. 505, 701 A.2d 568, 571 (Pa.1997). Although Pa. R.P.C. 1.5 declares that "[a] lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee," *Id.,* the Supreme Court has held that the Rules of Professional Conduct do not have the effect of substantive law but, instead, are to be employed in disciplinary proceedings. *In re Estate of Pedrick,* 505 Pa. 530, 482 A.2d 215, 217 (1984). As the Preamble to the Rules state:

Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process ... Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide a structure for regulating conduct though disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, it does not imply that an antagonist in a collateral proceeding or transaction has standing to enforce the Rule. *Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.*

Pa.R.P.C., Preamble (emphasis added).

¶ 43 Given the foregoing, we conclude that the trial court erred in utilizing Pa. R.P.C. 1.5 as a means by which to conclude that Appellants' legal fees were excessive and to reduce the portion of those fees that it found to be unreasonable under the Rule. Our Supreme Court, alone, has the exclusive authority to regulate the practice of law. The Rules of Professional Conduct do not carry the force of substantive law, nor do they broaden an attorney's duties in civil legal proceedings; instead, they are a basis upon which to sanction a lawyer through the disciplinary process. Accordingly, Pa.R.P.C. 1.5 was not a source of authority for the trial court to reduce Appellants' legal fees.[4]

¶ 44 Additionally, the trial court drew an analogy to case law in the areas of decedent's estate and minors to arrive at its conclusion that it possessed the inherent authority to determine whether Appellants' legal fees were reasonable. It is well established that an orphans' court, in certain situations, can reduce the fees of an executor and a trustee to a level that it determines is "reasonable and just compensation." *In re Estate of Rees,* 425 Pa.Super. 490, 625 A.2d 1203, 1206 (1993); *In re Estate of Sonovick,* 373 Pa.Super. 396, 541 A.2d 374, 376 (1988). It is equally well settled that an orphans' court can reduce an attorney's legal fees and expenses when they are charged in connection with the settlement of a minor's civil law claim. *Gilmore v. Dondero,* 582 A.2d 1106, 1108 (Pa.Super.1990). In these cases, however, the orphans' court has express statutory or rule-based authority to assess the reasonableness of the attorney's legal fees. *See* 20 Pa.C.S.A. § 3537 (executor); 20 Pa.C.S.A. § 7768 (formerly 20 Pa.C.S.A. § 7185) (trustee); Pa.R.C.P. 2039(b) (minor's settlement). As explained above, there is no similar explicit authority

---

4. The trial court cited *Eckell v. Wilson,* 409 Pa.Super. 132, 597 A.2d 696, 701 n. 7 (1991), for the proposition that it was "actually required to use the Pennsylvania Rules [of Professional Conduct.]" T.C.O., 7/21/08, at 3, 5. In *Eckell,* a lawyer commenced a civil action against his client for breach of an oral fee agreement, whereby the final fee was to be decided at the conclusion of the litigation based, in part, upon the "reasonable value of the services." *Id.* at 697. Finding error in the trial court's dismissal of the complaint, this Court reversed and remanded with instruction that the trial court apply Pa.R.P.C. 1.5 to assess the "reasonable value" of the attorney's services. *Eckell,* therefore, employed Pa.R.P.C. 1.5 simply as a device to interpret the contractual language of an agreement between a client and attorney in their civil action. Here, in sharp contrast, the trial court utilized Pa.R.P.C. 1.5 as an authoritative source permitting it to review and reduce, *sua sponte,* an attorney's legal fees. Hence, *Eckell* is factually inapposite, and the trial court's reliance on that case is misplaced.

granted to an orphans' court under Pa. O.C.R. 15.5(d) or the Adoption Act, and we decline to find such authority in the language of these provisions. Hence, the trial court's analogy is unavailing.

¶ 45 Likewise, the trial court cited a decision from the New York intermediate appellate court, *In re Male Infant B.*, 96 A.D.2d 1055, 466 N.Y.S.2d 482 (1983), for the proposition that it possesses the inherent authority to modify Appellants' legal fees. In that case, however, the court had the express statutory authority under New York Social Services Law § 374 to reduce an attorney's legal fees in adoption proceedings. *See id.* at 1056, 466 N.Y.S.2d 482 (citing § 374(6) ("This subdivision shall not be construed to prevent the payment by an adoptive parent ... of reasonable and actual legal fees charged for consultation and legal advice, preparation of papers and representation and other legal services rendered in connection with an adoption proceeding ...")). Because no such statutory authority exists in this case, we are unpersuaded by *In re Male Infant B.*

¶ 46 For the above-stated reasons, we conclude that the trial court lacked the authority to reduce Appellants' legal fees on the ground that they were excessive and unreasonable. The trial court, therefore, committed an error of law when it reduced, *sua sponte,* Appellant's legal fees to an amount that it found to be reasonable. Accordingly, we reverse the trial court's order and remand for further proceedings.

¶ 47 Order reversed. Case remanded. Jurisdiction relinquished.

¶ 48 Judge COLVILLE Concurs in the Result.