J-A16034-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| FLAHERTY FARDO, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS A. KEISER, A/K/A TONY | : | |
| KEISER | : | |
| | : | |
| Appellant | : | No. 1260 WDA 2015 |

Appeal from the Judgment August 19, 2015
in the Court of Common Pleas of Allegheny County
Civil Division at No(s): AR 14-001920

BEFORE:    SHOGAN, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:         **FILED AUGUST 08, 2016**

Thomas A. Keiser a/k/a Tony Keiser (Keiser) appeals from the judgment entered on August 19, 2015, against him and in favor of Flaherty Fardo, LLC. We affirm.

This case arises from a fee dispute between Keiser and the law firm of Flaherty Fardo.  Noah Fardo, the managing partner of Flaherty Fardo, met Keiser in 2002 and represented him in several legal matters between 2002 and 2011.  In 2006, Keiser became employed as a financial advisor for Citigroup.  When Citigroup hired Keiser, part of his compensation package included an employee forgivable loan (EFL) of approximately $1.5 million.[1]

---

[1] This was a nine-year special compensation arrangement under which Citigroup agreed to deduct a portion of what Keiser owed on the EFL for every year he remained in Citigroup's employment.    Under these

*Retired Senior Judge assigned to the Superior Court.

Keiser left Citigroup after just three years,[2] and in January of 2010, Citigroup sued Keiser to recover the remaining $1,032,000 on the loan plus interest and attorneys' fees. Eventually, Keiser retained Flaherty Fardo to represent him to defend the Citigroup lawsuit.

Initially, Keiser agreed to pay Flaherty Fardo on an hourly basis for its work in this matter. Then, recognizing that this matter would be very expensive, Fardo proposed a contingent fee arrangement. That arrangement included a $32,000 flat fee up front plus an additional ten percent of any savings realized by Fardo from the total amount being requested by Citigroup. That arrangement was memorialized in an e-mail dated October 31, 2011, which stated the following, in relevant part.

> Also, I want to confirm our fee arrangement for the litigation. It's my understanding that we will charge you a flat fee of $32,000.
>
> I am attaching an invoice for the flat fee. In addition, our fee will also include a contingency of a minimum of 10% of any savings realized from the total amount which Citi[group] asked for at Arbitration.

Complaint, 4/24/2014, at Exhibit A.

---

circumstances, for every year that Keiser remained employed by Citigroup, Citigroup deducted $172,000 from Keiser's balance on the loan.

[2] Keiser left Citigroup in the midst of the 2009 financial crisis that impacted many large brokerage firms, including Citigroup.

Keiser issued a check to Flaherty Fardo for $32,000 on December 13, 2011. The arbitration hearing was delayed until 2014 and lasted four days. At the close of arbitration, Citigroup was still asking for $1,032,000 on the principal loan amount and $396,778.65 in interest and attorneys' fees. On February 19, 2014, the arbitrators awarded the entire $1,032,000 of principal to Citigroup, but denied Citigroup all interest and attorneys' fees. Accordingly, Flaherty Fardo believed they saved Keiser approximately $400,000. Thus, Flaherty Fardo sent an invoice to Keiser for $40,394.05, which included the $39,677.87 in savings plus actual costs advanced in the litigation. On March 11, 2014, Keiser discharged Flaherty Fardo as his attorney in this matter.

On April 24, 2014, Flaherty Fardo filed a complaint in the Arbitration Section of the Civil Division of the Allegheny County Court of Common Pleas against Keiser for breach of contract and *quantum meruit* in the alternative. On September 23, 2014, the panel of arbitrators found in favor of Flaherty Fardo and against Keiser for $19,000. Keiser filed an appeal for a trial *de novo* in the Court of Common Pleas. On June 1, 2015, the case proceeded to a non-jury trial before the Honorable Joseph M. James, and the trial court returned a verdict in favor of Flaherty Fardo for $39,679.86. Keiser timely filed a motion for post-trial relief, which was denied on August 13, 2015.

Keiser entered judgment on the verdict and timely filed a notice of appeal. Both Keiser and the trial court complied with Pa.R.A.P. 1925.

Although Keiser presents four separate issues for our review, his entire argument is really a challenge to the validity of the contingent fee agreement, which we review mindful of the following.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue … concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 664-65 (Pa. Super. 2014) (quoting *Wyatt, Inc. v. Citizens Bank of Pennsylvania*, 976 A.2d 557, 564 (Pa. Super. 2009) (internal citations omitted)).

Keiser argues that the e-mail sent by Fardo to Keiser was not a "signed writing to reflect the terms of the parties' agreement." Keiser's Brief at 10. Thus, Keiser contends the agreement was not enforceable pursuant to Pennsylvania Rule of Professional Conduct 1.5(c), which governs

contingent fee agreements between attorneys and clients.[3]  In considering

this issue, we observe that

> the Supreme Court has held that the Rules of Professional Conduct do not have the effect of substantive law but, instead, are to be employed in disciplinary proceedings. ***In re Estate of Pedrick***, [] 482 A.2d 215, 217 ([Pa.] 1984). As the Preamble to the Rules state:
>
>> Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process … Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide a structure for regulating conduct though disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, it does not imply that an antagonist in a collateral proceeding or transaction has standing to enforce the Rule. *Accordingly, nothing in the Rules should be deemed to augment*

---

[3] Pennsylvania Rule of Professional Conduct 1.5(c) provides, in relevant part, that a

> contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.

Pa.R.P.C. 1.5(c).

> *any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty*.

Pa.R.P.C., Preamble (emphasis added).

***In re Adoption of M.M.H.***, 981 A.2d 261, 272-73 (Pa. Super. 2009).

Based on the foregoing, the law is clear that the Pa.R.P.C. 1.5(c) did not create a basis for the trial court to find that Flaherty Fardo was not entitled to payment for work completed on Keiser's behalf. Moreover, even if this rule did create a substantive right, Flaherty Fardo did have the contingent fee agreement in writing via e-mail.

Keiser next argues that the writing in this instance is not valid because it was not signed by him. In support of this contention, Keiser cites to two Pennsylvania Supreme Court cases, both of which hold that in the context of the statute of frauds, a writing is not valid unless it is signed by the parties. Keiser's Brief at 14-15. Importantly, Keiser points us to no case law that indicates that a contingent fee agreement must comply with the strict requirements of the statute of frauds. Accordingly, the trial court did not commit an error of law by denying relief on this basis.

In conclusion, the evidence presented at trial supports the trial court's decision that Keiser owes Flaherty Fardo $39,679.86 for the savings Keiser realized through arbitration. Therefore, Keiser is not entitled to relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary


Date: <u>8/8/2016</u>